[No. B047932. Second Dist., Div. One. Mar. 6, 1991.]

301 OCEAN AVENUE CORPORATION, Plaintiff and Appellant, v. SANTA MONICA RENT CONTROL BOARD, Defendant and Respondent.

**COUNSEL**

Brenda Barnes for Plaintiff and Appellant.

Anthony A. Trendacosta and Gilbert H. Friedman for Defendant and Respondent.

**OPINION**

**ORTEGA, J.**—Appellant, a Santa Monica landlord, petitioned for writ of mandate to overturn the Santa Monica Rent Control Board's (Board) determination that parking is a base amenity for 38 of the 46 rent controlled units in appellant's building. The superior court applied the substantial evidence test and upheld the Board's determination. This appeal followed. Under the facts of this case, we conclude the Board's determination of base amenities affects appellant's fundamental vested right to control the use of

property, and warrants the application of the independent judgment test. We reverse the judgment and remand.

FACTS

In April 1979 the voters of the City of Santa Monica adopted a rent control ordinance (art. XVIII, Santa Monica City Charter, hereafter Charter Amendment) to be administered by the Board. The Charter Amendment limited rents[1] by establishing a "base rent ceiling" of the rent in effect on April 10, 1978, one year prior to the passage of the Charter Amendment. (Art. XVIII, § 1804 (b).) The Board is charged with determining the proper base rent ceiling for a particular unit, and may make upward or downward adjustments of the base rent ceiling. (Art. XVIII, §§ 1803 (f)(3), 1805.)

The Charter Amendment required the landlord to register all controlled rental units with the Board within 60 days after its adoption. (Art. XVIII, § 1803 (q).) The initial registration required the landlord to disclose, among other things, the rent in effect at the time of the adoption of the Charter Amendment, the base rent ceiling (i.e., the rent in effect one year prior to the adoption of the Charter Amendment), and the "housing services" provided to each rent controlled unit. (Art. XVIII, § 1803 (q).) The term "housing services" (also referred to herein as "amenities") includes, but is not limited to: "repairs, maintenance, painting, providing light, hot and cold water, elevator service, window shades and screens, storage, kitchen, bath and laundry facilities and privileges, janitor services, refuse removal, furnishings, telephone, parking, and any other benefit, privilege or facility connected with the use or occupancy of any rental unit . . . ." (Art. XVIII, § 1801 (d).)

According to section 13000 of chapter 13 of the Santa Monica Rent Control Regulations (Regulations), the purpose of registration is "to enable the Board to control and monitor rents as mandated by the Charter

---

[1] All references hereafter to "Article XVIII" alone followed by a section number are to the Charter Amendment. The Charter Amendment defines "rent" as follows: "All periodic payments and all nonmonetary consideration including but not limited to, the fair market value of goods or services rendered to or for the benefit of the landlord under an agreement concerning the use or occupancy of a rental unit and premises including all payment and consideration demanded or paid for parking, pets, furniture, subletting and security deposits for damages and cleaning." (Art. XVIII, § 1801 (f).)

A rental "unit" is "any building, structure, or part thereof, or land appurtenant thereto, or any other rental property rented or offered for rent for living or dwelling house units, together with all housing services connected with use or occupancy of such property such as common areas and recreational facilities held out for use by the tenant." (Art. XVIII, § 1801 (h).)

Amendment. Landlord registration provides the Board with information regarding April 10, 1978 rents and amenities existing on each and every property in Santa Monica. . . ." According to chapter 13, section 13002 (a)(5) of the Regulations, a "proper" registration includes the rent and apartment and building amenities provided to each unit on April 10, 1978.

With respect to apartment amenities, the initial printed registration form stated: "Select from list on right and enter letter in column on left." The "list" contained the following amenities which were designated by the letters a through o: utilities, carpets, drapes, screens, storage, furniture, parking space, garage, cooking facilities, fireplace, ocean view, built-in appliances, balcony, two-story or split, and "other." A separate instruction sheet stated in relevant part: *"Apartment Amenities* [¶] Indicate the services *currently* included with each unit by writing the letter shown beside the list of services in the appropriate column line. For example, if Apartment 1 is furnished and has carpets, drapes and a parking space, fill in c, d, h, i in the column space under 1.22 for Apartment 1."

Appellant, 301 Ocean Avenue Corporation, owns an apartment building in Santa Monica which contains 46 rent controlled units. The corporate officers are three family members who live together in one of the apartments.

In June 1979, after the passage of the Charter Amendment, appellant's president, Mr. Chester A. Hoover, Jr., filled out the requisite initial landlord registration form. Mr. Hoover listed parking as an amenity for 45 of the 46 rent controlled units, even though there were only 40 available parking spaces on April 10, 1978. He also incorrectly stated on the form that each of the units had cooking facilities, even though not all of the units were furnished with refrigerators on April 10, 1978.

At some time thereafter, the Board revised its registration form so that it explicitly asked for the "Apartment Amenities on *4/10/78.*" (Italics added.) In addition, the revised form eliminated the reference to "cooking facilities," and asked whether the unit was furnished with a stove, refrigerator, dishwasher and garbage disposal.

In July 1986, Mr. Hoover filled out the revised registration form. This time, Mr. Hoover did not list parking as an April 10, 1978, amenity for any of the rent controlled units. Mr. Hoover further indicated that only some of the units were furnished with refrigerators.

Due to the discrepancy between the two registration forms with respect to parking spaces and refrigerators, appellant filed a "Petition for Determination of Base Rent Ceiling and/or Amenities." The Regulations provide that if a new registration conflicts with the first, a question of fact is raised as to the correct rent or amenities to be registered. In that case, the owner may petition for a proper determination of the correct rent and amenities. The owner has the burden of proving the correct rent or amenities. (Regs., ch. 13, § 13004 (e).)

At the administrative hearing, Mr. Hoover testified that there were only 40 available parking spaces on April 10, 1978. Prior to the enactment of the Charter Amendment, Mr. Hoover had assigned parking spaces as an accommodation to some but not all tenants, and used his discretion to give and take away parking privileges at any time. None of the leases mentioned parking as a service covered under the lease. When tenants moved to different units within the building, they were not necessarily assigned to different parking spaces. Mr. Hoover also provided some parking spaces to nontenants, who were sometimes charged for those spaces.

The hearing officer subpoenaed some long-term tenants to testify about whether they had parking spaces and refrigerators on April 10, 1978. Some 16 or so tenants appeared to testify. After evaluating their testimony, the hearing officer concluded that on April 10, 1978, 17 units had refrigerators, and 38 units had parking spaces. Only the latter finding is contested herein.

In essence, the hearing officer found that parking was an amenity for all but the seven units whose tenants had testified that they had no parking on April 10, 1978 (units 3, 8, 26, 31, 35, 39 and 46).[2] The hearing officer found that parking was an amenity for all the other units, including those units as to which no tenants had testified, and also those units whose tenants had testified that, although they had parking, their rent did not include parking (units 4 and 6).

The hearing officer's rationale was apparently twofold. First, the hearing officer found that under chapter 13, section 13004 (e) of the Regulations, there was a presumption in favor of the validity of Mr. Hoover's initial registration form which had listed parking as an amenity for 45 units. The hearing officer overruled appellant's objection to the initial registration form based on its erroneous instruction to list current amenities as opposed to April 10, 1978, amenities. And second, the hearing officer found that under Article XVIII, section 1801 (h), any tenant who had parking on April 10,

---

[2] One of these was excused from testifying because of her lack of memory due to Alzheimer's disease. However, a letter had been written on her behalf.

1978, was receiving a "housing service" connected with the use or occupancy of the apartment building.

Based on this rationale, the hearing officer concluded that while Mr. Hoover's testimony that he had controlled the use of the parking area was "credible," it was irrelevant.[3]

After the Board affirmed the hearing examiner's decision on appeal, appellant petitioned for a writ of mandate (Code Civ. Proc., § 1094.5). The superior court denied the petition after concluding that substantial evidence supported the Board's determination. The superior court's "Decision on Submitted Matter" stated in relevant part: "There is substantial evidence that parking, at the time one year before enactment of the law, was a housing service for 38 of the units, and the fact that the landlord had given that benefit freely to some tenants, and reserved the right to later take it away, does not change the character of the benefit. Before rent control a landlord could raise rents and change amenities at will where there was no rental agreement. The fact that this amenity was subject to such free determination by the landlord does not remove it from the regulation by the law, nor does such a regulation amount to a taking of property without due process. Here, parking was afforded to a tenant as a benefit connected with the tenant's use, and became a part of the rental unit subject to rent control by definition when the Rent Control Law was enacted."

Appellant appeals from the order denying its petition for writ of mandate.

---

[3] The hearing officer's decision states in relevant part: "The hearing examiner finds Mr. Hoover credible. The registration of parking as an included amenity for all units on the original registration form is found to be unreliable. However, although Mr. Hoover's testimony was credible, and the hearing examiner believes there are only forty available parking spaces, Mr. Hoover presented very little evidence to establish, as was his burden, which units did and did not have parking in 1978. The presumption of Regulation § 13004(e) regarding parking is rebutted only as to the number of units having parking. As there is much evidence that some tenants were provided with parking in 1978, the hearing examiner finds the presumption of Regulation § 13004(e) still applies to individual units.

"It is petitioner's position that although some tenants were using parking in 1978, parking was not provided as an amenity for any unit. However, the definition of an amenity is a service provided on April 10, 1978 in connection with the use and occupancy of a unit. Section 1801(f) of the Rent Control Law specifically includes parking in its definition of housing services. Regardless of Mr. Hoover's state of mind while doing so, he provided parking to several tenants with no additional charge above their rent on April 10, 1978. The parking was clearly offered in connection with the use and occupancy of those rental units. Parking was clearly an amenity for some units, and it was Mr. Hoover's burden to show which units had parking in 1978 and which did not."

## Issue

Appellant raises numerous contentions on appeal, one of which we find to be dispositive: Appellant contends the trial court erroneously applied the substantial evidence test.

## Discussion

Preliminarily, we note that the administrative proceedings below did not arise from a disgruntled tenant's complaint. ██ Although the parking area is inadequate to supply each of the 46 rent controlled units with a parking space, appellant's method of assigning the 40 available parking spaces has apparently failed to give rise to any formal tenant complaint for excess rent.[4] This dispute thus appears to rest solely between the Board and appellant.

Appellant contends that the Board's decision took away Mr. Hoover's discretion to control the use of the parking area, and thus resulted in a taking of appellant's "vested" right of control. ██ When an administrative decision substantially affects a fundamental vested right, the independent judgment standard of review applies. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383].) The trial court must not only examine the administrative record for errors of law, but it must also exercise its independent judgment upon the evidence. (*Ibid.*; see Code Civ. Proc., § 1094.5, subd. (c).) On appeal, the reviewing court can overturn the trial court's factual findings only if the evidence received by the trial court, including the administrative record, is insufficient as a matter of law to sustain the finding. (*Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 251 [220 Cal.Rptr. 2], criticized on other grounds in *Surfside Colony* v. *Cal. Coastal Com'n.* (1991) 226 Cal.App.3d 1260, 1269-1272 [277 Cal.Rptr. 371].)

---

[4] A landlord's rent overcharge is actionable by the tenant who may bring a civil action for damages or file an administrative complaint. (Art. XVIII, § 1809; see *McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 359, 375-379 [261 Cal.Rptr. 318, 777 P.2d 91].) In addition, the violation of any of the provisions of article XVIII is punishable as a misdemeanor by a fine of not more than $500, and/or by imprisonment in county jail for a period not exceeding six months. (Art. XVIII, § 1810.)

A rent overcharge may arise from a reduction in base amenities or the imposition of an unauthorized charge for base amenities. In *Sterling* v. *Santa Monica Rent Control Bd.* (1985) 168 Cal.App.3d 176 [214 Cal.Rptr. 71], this division noted that: "Since a landlord may increase his rate of return (and hence have the *effect* of increasing rents) by failing to make repairs or to correct defective conditions, by reducing services, space or equipment or by permiting deterioration of the unit, the stated purpose of article XVIII is broad enough to justify decreasing rents for the existence of any of these conditions." (*Id.* at pp. 185-186.)

■ But when the administrative decision does not involve or affect a fundamental vested right, the trial court reviews the administrative record to determine whether the findings are supported by substantial evidence and if the agency committed any errors of law. (*Berlinghieri* v. *Department of Motor Vehicles, supra,* 33 Cal.3d at p. 395.) On appeal, the reviewing court also applies the substantial evidence test. (*Whaler's Village Club* v. *California Coastal Com., supra,* 173 Cal.App.3d at p. 251.)

■ When a right "has been legitimately acquired or is otherwise 'vested,' and when that right is of a fundamental nature from the standpoint of its economic aspect or its 'effect . . . in human terms and the importance . . . to the individual in the life situation,' then a full and independent *judicial* review of that decision is indicated because '[t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.' ([*Bixby* v. *Pierno* (1971) 4 Cal.3d 130,] 144.)" (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29]; *San Marcos Mobilehome Park Owners' Assn.* v. *City of San Marcos* (1987) 192 Cal.App.3d 1492, 1501 [238 Cal.Rptr. 290].)

■ Whether an administrative decision substantially affects a fundamental vested right must be decided on a case-by-case basis. (See *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 146 [93 Cal.Rptr. 234, 481 P.2d 242].) Although no exact formula exists by which to make this determination (*ibid.*), courts are less sensitive to the preservation of purely economic interests. (*San Marcos Mobilehome Park Owners' Assn.* v. *City of San Marcos, supra,* 192 Cal.App.3d at p. 1499.) In deciding whether a right is "fundamental" and "vested," the issue in each case is whether the " 'affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power.' [Citation.]" (*Whaler's Village Club* v. *California Coastal Com., supra,* 173 Cal.App.3d at p. 252.)

■ We find that the affected right in this case is sufficiently personal, vested and important to preclude its extinction by a nonjudicial body. By adopting the policy that parking is a base amenity despite the tenant and landlord's common belief that the rent does not cover parking, the Board has shifted a property right from the landlord to the tenant without regard to their mutual understanding. Although the Board contends its decision still affords appellant the economic choice of reducing its rent if it deprives a tenant of parking, thus making the impact of its decision purely economic, that is not the issue before us. The issue is whether the Board may arbitrarily vest the tenant with a property right to a parking space where no such right existed prior to rent control.

The Board's reliance on the lesser standard of review applied in *San Marcos Mobilehome Park Owners' Assn.* v. *City of San Marcos, supra,* 192 Cal.App.3d 1492, is misplaced. While a rent control board's denial of a landlord's rent increase request "does not interfere with the use of land [and] only restricts the escalation of rents" (*id.* at p. 1503; see *Campbell* v. *Residential Rent Stabilization & Arbitration Bd.* (1983) 142 Cal.App.3d 123, 126 [190 Cal.Rptr. 829]), the Board's decision in this case interferes with the understanding between appellant and at least some of its tenants that the right to parking was purely gratuitous. This interference is more serious than the mere denial of a rent increase petition. This interference affects the preexisting use of appellant's property.

To ignore appellant's preexisting use of the parking area is to ignore the arm's length rents that had been established under free market conditions prior to rent control. The Charter Amendment, like most rent control ordinances, used "the rent charged on a prior date as a starting point for the fixing of maximum rents on the theory that it approximates the rent that would be paid in an open market without the upward pressures that the imposition of rent control is intended to counteract. [Citations.]" (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 166 [130 Cal.Rptr. 465, 550 P.2d 1001].) Apparently, the April 10, 1978, date "was selected because it constituted the most recent year in which arm's length rents had been established in a freely operating market unencumbered by rent control." (*Oceanside Mobilehome Park Owners' Assn.* v. *City of Oceanside* (1984) 157 Cal.App.3d 887, 906 [204 Cal.Rptr. 239].) But the Board's policy of providing each tenant with an enforceable right to parking unless appellant could show the tenant did not physically occupy a parking space on the appointed date, goes beyond the scope of rent control. The Board has elevated the right to parking beyond that which is necessary to ensure the availability of affordable housing.

Although the Board refers by way of example to *Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894], in which the majority opinion applied the substantial evidence test in upholding a regulation which severely limited a landlord's right to demolish his habitable building and retire from the rental business, the *Nash* decision was rendered moot by the enactment of Government Code section 7060 et seq. (the Ellis Act). The Ellis Act prohibits public entities from compelling the owner of any residential real property to offer, or continue to offer, accommodations in the property for rent or lease. (Gov. Code, § 7060, subd. (a).) The Ellis Act specifically states that the legislative intent is "to supersede any holding or portion of any holding in Nash v. City of Santa Monica, 37 Cal.3d 97 to the extent that the holding, or portion of the holding, conflicts with this

chapter, so as to permit landlords to go out of business. . . ." (Gov. Code, § 7060.7.) Because the Legislature has so clearly indicated that a landlord's right to go out of business is a fundamental vested right, we are not bound by *Nash*'s discussion on standard of review.

We conclude that under the facts of this case, the Board's finding that parking is a base amenity for 38 units affects appellant's fundamental vested right to control property. As appellant states in its brief on appeal, "[t]his is a case where some 8,000 square feet of petitioner's property will be out of petitioner's control if the trial court's decision stands. ▇▇▇ In this case, nothing short of independent review by the Court of the entire record will protect the constitutional right to control one's own property."[5]

We hold that the independent judgment standard is the correct standard of review to be applied by the trial court.

## DISPOSITION

We reverse the judgment and remand the cause to the trial court for its reconsideration under the independent judgment standard of review.

Each party is to bear its own costs on appeal.

Spencer, P. J., and Devich, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 30, 1991. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.

---

[5] This does not mean, however, that after a proper and final determination of base rent and amenities has been made, subsequent administrative rulings on any future rent increase or decrease petitions will also be subject to independent judicial review. We hold only that the initial administrative determination of whether parking is a base amenity is, under the facts of this case, subject to independent judicial review.