[No. B058782. Second Dist., Div. Seven. June 22, 1992.]

FRANCES S. RICHMAN, Plaintiff and Respondent, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and Appellant.

1458

## COUNSEL

Anthony A. Trendacosta and Jacqueline A. Boyd for Defendant and Appellant.

Gordon P. Gitlen for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—Appellant Santa Monica Rent Control Board (Board) appeals from a judgment granting respondent's petition for a writ of mandate on statutory grounds. The writ ordered the Board to set aside its decision that base rent included parking on two particular rental units owned by respondent. We reverse.

### FACTUAL AND PROCEDURAL SYNOPSIS

#### I. *The Rent Control Law*

The Board is a public agency created by the Santa Monica City Charter and vested with authority to administer and enforce article XVIII of that charter (the Rent Control Law).[1] Respondent is an owner of rental property in Santa Monica subject to the Rent Control Law.

The Rent Control Law limits rents by establishing a base rent ceiling of the rent in effect on April 10, 1978. (§ 1804 (b).) The Board is charged with determining the proper base rent ceiling for a particular unit and may make upward or downward adjustments of the base rent ceiling. (§§ 1803 (f)(3) & 1805.)

The Rent Control Law required landlords to register all controlled rental units with the Board within 60 days after its adoption. (§ 1803 (q).) The

---

[1] Unless otherwise indicated, section references are to sections of the Rent Control Law, and "regulation" will be used to refer to regulations passed by the Board pursuant to the Rent Control Law.

initial registration required the landlord to disclose, among other things, the rent in effect at the time of the adoption of the Rent Control Law, the base rent ceiling and the housing services provided to each rent controlled unit. (§ 1803 (q).)

Housing services, which are also referred to as amenities, included, but are not limited to: "repairs, maintenance, painting, providing light, hot and cold water, elevator service, window shades and screens, storage, kitchen, bath and laundry facilities and privileges, janitor services, refuse removal, furnishings, telephone, parking, and any other benefit, privilege or facility connected with the use or occupancy of any rental unit. . . ." (Italics added.) (§ 1801 (d).)

The purpose of registration is "to enable the Board to control and monitor rents as mandated by the [Rent Control Law]. Landlord registration provides the Board with information regarding April 10, 1978 rents and amenities existing on each and every property in Santa Monica." (Reg. 13000.) A proper registration includes the rent and the amenities provided to each unit on April 10, 1978. (Reg. 13002.)

II. *Administrative Proceedings*

A. *Decrease Petitions*

Two tenants of different rental units on respondent's property filed rent decrease petitions alleging loss of use of a parking space and seeking commensurate rent decreases. Each tenant stated that parking had been provided to his/her unit in 1978 as part of the rent paid and alleged that in addition to the lawful rent, respondent was attempting to charge a separate fee for use of the parking space.

Because the registration form reflecting the base rent and base amenities was not clear, the Board filed its own base amenity petition and consolidated it with one of the petitions.

B. *Administrative Hearing*

1. *Evidence at the Hearings*

A hearing was held on each petition. The original registration form listed parking as a base amenity and also indicated that there was a $10 fee for parking.

In one proceeding, the tenant testified that she had rented the unit in 1977. There was no written rental agreement. The negotiations were handled by the

resident managers. The managers told her that she would have a parking space and did not mention any separate fee for a parking space.

In the following years, the tenant paid a single monthly amount for rent. The annual notices of rent increase made no distinction between rent and a fee for parking. Then, in 1988, the annual rent increase notice purported to increase the rent by 3 percent and a separate parking fee from $15 to $25. That notice was the first time that the tenant had any indication that there was a separate fee for parking.

Respondent's son, Randall Richman (Richman), testified that he was the executive manager who oversaw the resident managers in 1978. There are 36 units at the property and only 23 parking spaces. Since 1950, parking space had been allocated on a first-come, first-served basis, and not to specific units. In 1978, respondent charged a separate fee of $10 per parking space. The separate fee was increased to $15 and then to $25.

Richman testified that he directed the resident managers to tell prospective tenants about the availability of parking for a separate fee. He also testified that if anyone had ever given up a space, they would have gotten a rent reduction. The resident managers did not testify.

### 2. *The Hearing Examiner's Decision*

The examiner determined that the ambiguity in the original registration form called into play Board regulation 3201, which distinguishes between true separate agreements and agreements involving consideration indivisible from consideration for occupancy of the unit (i.e., rent).[2]

The hearing examiner found that the contractual relationship between the tenant and respondent satisfied two of the three criteria set forth in regulation 3201 for a separate agreement in that the fee charged for parking was comparable to the fee which would be charged in an unregulated market, and there was no evidence that failure to pay the parking fee would cause eviction of the tenant. However, testimony of the tenant established that, during negotiations for occupancy, no distinction was drawn between the rent and the fee for parking nor was the tenant given an option to accept or reject the amenity. The hearing examiner concluded that payment for the

---

[2]One of respondent's objections to the hearing examiner's decision is that there was no ambiguity in the registration form. Even if that were true, the presumption that parking was not included in the rent in 1978 can be rebutted as it was by the tenant's testimony. (Reg. 13004, subd. (e).) Although noting the ambiguity in the original registration form, the hearing examiner recognized that the crucial question was whether or not the parking fee had been paid pursuant to a separate agreement.

parking space for the subject unit had not been separately negotiated from payment of rent and was therefore rent.

In accordance with the findings, the hearing examiner concluded that parking is a base amenity for that unit, that the parking fee charged in 1978 was actually part of the rent, and that the base rent should be increased by $10. The examiner also determined that the maximum allowable rent (MAR) for the unit was $509, including parking. No decrease was awarded because the tenant had not been deprived of the parking space.

The evidence, findings and conclusions were essentially the same in the other proceeding. Accordingly, respondent's appeal in each was consolidated on the administrative appeal to the Board.

### C. *Administrative Appeal*

Respondent filed a timely administrative appeal, and the Board rejected the appeal and affirmed the hearing examiner's decision.

### III. *Superior Court Proceedings*

Respondent sought review of the Board's administrative decision by means of a petition for a writ of mandamus (Code Civ. Proc., § 1094.5) and a complaint for declaratory relief and attorney fees (Gov. Code, § 800).

After permitting the parties to file supplemental papers, the court heard the matter. The administrative record was received into evidence. Using the independent judgment test, the court granted the writ on statutory grounds. The only statutory grounds raised was the Petris Act. (Civ. Code, § 1947.7 et seq.)

The Board's motion for reconsideration was denied. The Board filed a timely notice of appeal.

### CONTENTIONS

1. The Petris Act has no bearing on this case.

2. The independent judgment standard is not applicable to this case.

3. The Board's decision is supported by substantial evidence.

## DISCUSSION

### I. *The Instant Rent Decrease Petitions*

In 1988, two tenants on respondent's property received annual rent increase notices which purported to increase the rent on their units by 3 percent and also to increase a separate parking fee from $15 to $25. The tenants filed rent decrease petitions seeking rent decreases due to the loss of use of a parking space. The petitions alleged that parking had been provided to their units in 1978 as part of the rent paid.

After a hearing, the hearing examiner found that payment for parking was included in the base rent because payment for parking had not been separately negotiated in 1978. The examiner concluded that parking was a base amenity and that the parking fee charged in 1978 was part of rent. However, the hearing examiner did not allow a decrease in rent because the tenants had not lost the use of their respective parking spaces.

In the case in which the Board had filed its own base amenity petition, the examiner determined that the MAR should be increased to $509 per month and that no separate fee above that amount could be charged for parking.

The court granted respondent's writ petition on statutory grounds. The only statutory ground raised in the writ petition was the Petris Act (Act).

### II. *The Act*

**A. *Since the application of the Act was a question of law, it was proper for the court to consider the Act even though its application had not been raised in the administrative proceedings.***

The Act was not raised at any time during the administrative proceedings as a limitation on the Board's authority to determine base amenities. The Board contends that, therefore, it should not have been raised for the first time in the writ proceedings, as a litigant must raise all issues before an administrative agency in order to raise them on writ review. (*Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 417 [194 Cal.Rptr. 357, 668 P.2d 664].)

One of the exceptions to the doctrine of the exhaustion of administrative remedies is " 'when the subject matter of the controversy lies outside the administrative agency's jurisdiction.' " (*County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 73 [222 Cal.Rptr. 750].) "It is elementary that the construction of a statute (or ordinance) and its applicability is

solely a question of law." (*Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7 [143 Cal.Rptr. 430].) The ultimate resolution of such legal questions rests with the courts. (Cf. *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].) ██ Thus, the final determination of the applicability of the Act is outside the Board's jurisdiction.[3]

██ In the writ petition, respondent argued that Board's decision including parking as an amenity violated the Act's prohibition against changing rents. The Act provides that upon request, the landlord and tenant must be provided with a certificate of the permissible rent levels of the rental units. (Civ. Code, § 1947.8.) In relevant part, it provides:

"If the ordinance, charter, or regulation is in effect on January 1, 1987, the ordinance, charter, or regulation shall provide for the establishment and certification of permissible rent levels on or before January 1, 1988, including completion of all appeals and administrative proceedings connected therewith. After July 1, 1990, *no local agency may maintain any action to recover excess rent against any property owner who has registered* the unit with the local agency within the time limits set forth in this section . . . . The permissible rent levels reflected in the certificate or other documentation shall, *in the absence of intentional misrepresentation or fraud*, be binding and conclusive upon the local agency unless the determination of the permissible rent level is being appealed." (Italics added.) (Civ. Code, § 1947.8, subd. (b).)

The Board argues that even if the Act is applicable, the binding effect of the Act depends on fact issues not litigated in the administrative proceedings (i.e., the exception for fraud and misrepresentation) and the matter should have been remanded to it for a hearing on those issues. The Board argues that the information on the original registration form would be found to be untrue if raised in an administrative hearing. However, that issue was determined in respondent's favor by the hearing examiner, who found that there was no showing of misrepresentation or fraud in the registration form.[4]

Although there was arguably conflicting testimony about whether parking was included in rent, there were no disputed facts relating to the applicability

---

[3]The Board contends that independent judgment is not applicable to this case as the effect of the Petris Act "is a matter of law to which no standard of review is applicable." Such a contention is meritless, as questions of law are reviewed under the independent judgment or de novo standard. (See *301 Ocean Ave. Corp.* v. *Santa Monica Rent Control Bd.* (1991) 228 Cal.App.3d 1548, 1556 [279 Cal.Rptr. 636]; *Jongepier* v. *Lopez* (1983) 142 Cal.App.3d 535, 538 [191 Cal.Rptr. 131].)

[4]Regulation 13005, subdivision (b), provides that after rents have initially been certified, increases or decreases in maximum allowed rents shall be prospective in effect in the absence

of the Act. Therefore, it was proper for the court to consider the applicability of the Act even though it was not raised in the administrative proceedings.

B. *The Perris Act is not applicable to the facts of this case.*

However, we are not convinced that the court correctly applied the Act in this case. Although the Board increased the MAR on the one apartment, it also determined that the tenant was not entitled to a decrease in rent because she had not lost her parking space. Thus, this action was not an action by the local agency to recover excess rent.

The purpose of the Act is to exempt landlords who attempt good faith compliance with a rent control law from fines and penalties. "The Legislature finds and declares that the operation of local rent stabilization programs can be complex and that disputes often arise with regard to standards of compliance with the regulatory processes of those programs. Therefore, it is the intent of the Legislature to limit the imposition of penalties and sanctions against an owner of residential rental units where that person has attempted in good faith to fully comply with the regulatory processes." (Civ. Code, § 1947.7, subd. (a).) A landlord who is in substantial compliance with the relevant rent control law "shall not be assessed a penalty or any other sanction for noncompliance with the ordinance, charter, or regulation." (Civ. Code, § 1947.7, subd. (b).)[5]

The Board did not assess a penalty or sanction against respondent. As a matter of fact, it raised the MAR which respondent could charge on the subject unit; an action which benefited respondent. Moreover, the hearing examiner raised the MAR effective 30 days from the final Board decision and held that the raise would be only prospective in effect. Had the Board somehow allowed the tenant to recover for excess rent, then the Act might have come into play.

In addition, the Act provides that: "Nothing in this section shall be construed to grant to any public entity any power which it does not possess independent of this section to control or establish a system of control on the price at which accommodations may be offered for rent or lease, or to diminish any power to do so which that public entity may possess, except as specifically provided in this section." (Civ. Code, § 1947.7, subd. (f).) A similar provision is found in the section on rent certification. (Civ. Code, § 1947.8, subd. (i).)

of any finding of misrepresentation or fraud. The examiner found that no such showing had been made.

[5]The supplemental briefing permitted by the trial court was on the issue of respondent's substantial compliance with the Rent Control Law.

Prior to the enactment of the Act, the Board had the authority to determine which amenities were included in the base rent for a unit. In *Sterling* v. *Santa Monica Rent Control Bd.* (1985) 168 Cal.App.3d 176 [214 Cal.Rptr. 71], the Board contended that the trial court had improperly granted a peremptory writ prohibiting it from utilizing all applicable criteria in the Rent Control Law as the bases upon which to adjust maximum rents downward. The trial court's ruling had been partly based on the conclusion that state law pre-empted the Board's authority to decrease maximum rents in certain cases. (*Id.*, at pp. 180-181.)

Respondent states that *Sterling* does not give the Board the authority to determine that parking is a base amenity subject to rent control because the case dealt with decreases based on substantial deterioration and did not discuss parking. We do not read *Sterling* so narrowly. Noting that the purpose of the Rent Control Law was to allow the Board to regulate rents so that rents would not be increased unreasonably and so that landlords would receive no more than a fair return on their investment, the court concluded: "Since a landlord may increase his rate of return (and hence have the effect of increasing rents) by failing to make repairs or to correct defective conditions, *by reducing services*, space or equipment or by permitting deterioration of the unit, the stated purpose of [the Rent Control Law] is broad enough to justify decreasing rents for the existence of any of those conditions." (Italics added.) (168 Cal.App.3d at pp. 185-186.) The same court which decided *Sterling* later stated: "*A rent overcharge may arise from a reduction in base amenities or the imposition of an unauthorized charge for base amenities.*" (Italics added.) (*301 Ocean Ave. Corp.* v. *Santa Monica Rent Control Bd., supra*, 228 Cal.App.3d 1548, 1555, fn. 4.) We conclude that these cases implicitly recognize the authority of the Board to determine which particular amenities were included in the base rent for a particular unit.

Therefore, the Act did not prevent the Board from raising the MAR as opposed to prohibiting the Board from penalizing respondent by maintaining an action to recover excess rent.

III. *Regulation 3201*

Respondent contends that: "The issue in this case is not whether or not the parking fee and the parking were negotiated separately from rent and occupancy, but rather, by what authority allows the hearing examiner to abuse her discretion and include parking as a rent controlled amenity." Regulation 3201 authorizes the Board to make that determination.

Regulation 3201 provides that:

"(a) *Any payments by the tenant to the landlord, including payments for parking,* pets, furniture, or any facilities, equipment or services which are connected to the use and occupancy of the unit *are included as rent* as defined by Section 1801(f) of the Charter *unless the agreements for such payments meet all the standards of this section.* No separate agreement shall be permitted which require extra payments for additional occupants.

"(b) 'Base Rent Date' is defined as April 10, 1978, or the date the base rent was established if it was established subsequent to April 10, 1978. *If the facilities, equipment or services were provided on the base rent date, and were not provided under a separate agreement on the base rent date, a new charge cannot be added to the tenant's payments in addition to the maximum allowable rent.* To be a separate agreement on the base rent date, the agreement must meet all of the conditions in subsection (d) of this section.

"(c) If the particular facilities, equipment or services have not been previously included within the maximum allowable rent as set forth in (b) above, the landlord may offer such facilities, equipment or services to the tenant under the terms of a separate agreement, provided it conforms with this section.

"(d) An agreement may be considered separate from the rental agreement if it meets all of the following criteria:

"(1) The agreement to pay a separate fee for the use of the facilities, equipment or service must have been negotiated separately from the negotiation for the rental of the rental unit, with no pressure on the tenant to accept the separate agreement or separate fee as a condition of the rental of the apartment.

"(2) The terms of the agreement are comparable to those of similar lawful arrangements obtainable in the unregulated market.

"(3) The continued existence of the arrangement is not a condition of the tenancy and the tenant's termination or breach of the separate agreement is not a ground for eviction.

"(e) This section is declarative of existing policy and does not represent a change in policy." (Italics added.)

Accordingly, as authorized by regulation 3201, the hearing examiner found that there was no separate agreement and therefore parking was included in rent.

IV. *The Hearing Examiner's Factual Findings*

Even if the Act applied to the facts of this case, it would only prevent the Board from increasing the MAR. In its ruling on the writ petition, the court stated: "Writ granted based on statutory grounds—not constitutional grounds —as reflected in moving papers." Thus, it appears to us that the superior court made only a legal ruling and did not review the hearing examiner's factual findings or make any findings of fact of its own.

Since the court did not rule on the issue of the correctness of the hearing examiner's findings, any further review by this court is stymied. Accordingly, we remand the matter so that the court may provide the necessary review of the Board's factual findings. We note that there appears to be some confusion as to which standard of review applies to the Board's factual findings in this case. (See discussion in *301 Ocean Ave. Corp. v. Santa Monica Rent Control Bd.*, *supra*, 228 Cal.App.3d 1548, 1555-1558.) The superior court can, of course, request further briefing on this issue.

Respondent's request for sanctions for a frivolous appeal is denied.

### DISPOSITION

The judgment is reversed and the peremptory writ of mandate is vacated. The matter is remanded to the superior court for further proceedings consistent with the views expressed in this opinion. Appellant to recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.