Filed 10/3/13  Jhae v. City of Pasadena CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KUM MAN JHAE et al., | B244435 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BS125168) |
| v. | |
| CITY OF PASADENA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James C. Chalfant, Judge.  Affirmed.

Burkhalter Kessler Clement & George, Daniel J. Kessler and Amber M. Sanchez for Plaintiffs and Appellants.

Michele Beal Bagneris, City Attorney and Frank L. Rhemrev, Assistant City Attorney, for Defendants and Respondents.

* * * * * *

Plaintiffs and appellants Kum Man Jhae and Kun Chin Jhae appeal from a judgment denying their administrative mandate petition filed against defendants and respondents City of Pasadena and City Council of the City of Pasadena (the City or the City Council).  The petition requested modification of four of 20 conditions imposed on their business, Super Liquor, after it was found to be a public nuisance.  Because substantial evidence supports respondents' refusal to modify the conditions, the judgment is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

### *The Public Nuisance Determination and Operating Conditions*

Appellants have owned and operated Super Liquor in Pasadena since 2003, pursuant to a license issued by the California Department of Alcoholic Beverage Control (ABC).  On October 10, 2008, ABC issued a report summarizing an investigation of Super Liquor between January 2007 and April 2008.  The report stated that, during the applicable time period, Super Liquor violated the following provisions of Business and Professions Code:[1]  disorderly premises (§ 25601), failure to correct objectionable conditions on the premises (§ 24200, subd. (e)), failure to correct objectionable conditions on a sidewalk abutting premises (§ 24200, subd. (f)), and permitting illegal sales, negotiations for such sales, of narcotics upon the licensed premises (§ 24200.5).

ABC reported that Super Liquor had been a source of frequent law enforcement activity.  The premises were "a draw" on police resources.  Appellants failed to make an effort to correct objectionable conditions after being notified to do so by City officials.  Between October 4, 2007 and October 19, 2007, a department investigator purchased rock cocaine inside the premises and in the premises parking lot from various local dealers.  The purchases were made in the presence of appellant Kun Chin Jhae, and a store employee.

As a result of its investigation, on February 19, 2009 ABC issued an accusation against Super Liquor.  The accusation alleged the aforementioned violations of the

---

[1]     All further statutory references are to the Business and Professions Code unless otherwise indicated.

2

Business and Professions Code. On February 25, 2009, Super Liquor signed a stipulation and waiver for prehearing settlement with ABC. In exchange for a two-year stay on the revocation of Super Liquor's off-sale license, appellants waived the right to a hearing, reconsideration and appeal.

On March 13, 2009, ABC issued a decision which stated that cause for discipline had been established by Super Liquor's violations of sections 25601, 24200, subdivision (e) and 24200.5, subdivision (a). ABC imposed six conditions on Super Liquor's license. ABC advised the City of its decision by letter dated March 17, 2009.

On June 4, 2009, based on ABC's decision, the City's Code Enforcement Commission (the Commission) conducted a public hearing and determined Super Liquor operated as a public nuisance. The Commission also imposed 20 conditions of operation to ensure Super Liquor complied with performance standards required by the City's Deemed Approval Alcoholic Beverage Retail Sale Ordinance as set forth in Pasadena Municipal Code section 8.18 et seq. (PMC).

Super Liquor appealed the Commission's order to the City Council. The City Council denied the appeal adopting ABC's findings. The City Council also affirmed the Commission's imposition of 20 operating conditions. The City Council modified Condition No. 19 by reducing the time allowed for Super Liquor to sell alcohol to the hours of 9:00 a.m. to 6:00 p.m.

On January 25, 2010, the City reconsidered the matter and affirmed its prior decision imposing 20 operating conditions with certain modifications. The City also added Condition No. 21 which allowed Super Liquor to seek review after 12 months to determine whether the conditions of operations should be revised.

*The Original Petition and Injunction*

On March 1, 2010, appellants filed an administrative mandate petition. On March 12, 2010, the trial court granted a preliminary injunction staying enforcement of Condition No. 3 (which sought to prohibit the sale of single containers of distilled spirits) and Condition No. 19 (which limited Super Liquor's hours of operation and hours of alcohol sales). On March 18, 2010, the trial court issued an order staying Conditions

3

Nos. 3 and 19 pending trial of the matter. The trial court enjoined the City from enforcing Condition No.19 which restricted business hours of operation between the hours of 7:00 a.m. and 9:00 p.m. daily with the sale of alcohol limited to the hours of 9:00 a.m. to 6:00 p.m.

*The Modification Request*

A year after the injunction was issued, on March 14, 2011, Super Liquor submitted an application seeking to modify five of the 21 operating conditions. Super Liquor requested elimination of Conditions Nos. 3 and 19, which were the subject of the trial court's March 12, 2010 preliminary injunction. Super Liquor also requested clarification, modification or elimination of three additional Conditions Nos. 9, 10, and 18. Super Liquor's request was based on the absence of arrests, code enforcement complaints or ABC disciplinary action for over two years.

Condition No. 9 provided: "Management shall employ a private security guard to patrol the business premises and the adjacent sidewalks, including the north side of Orange Grove Boulevard adjacent to the property, during all hours of business operation to ensure that no littering, loitering, or consumption of alcohol occurs, and make prompt notification to the Pasadena Police Department of instances of loitering, the public consumption of alcohol or other illegal activity." Super Liquor requested removal of the requirement of "employing" a private security guard.

Condition No. 10 provided: "It shall be the responsibility of the business owner/operators of the business to remove identifiable litter from the premises and the public right of way (limited to the north side of East Orange Grove up to 100 feet from the premises)." Super Liquor requested clarification of the parameters and a modification to limit removal of litter from public sidewalks up to 50 feet from the premises.

Condition No. 18 provided: "All alcoholic beverage containers shall be identified with a sticker that has the name [o]f the business establishment. Translucent bags shall be identified in the same manner." Super Liquor requested that this condition be eliminated in its entirety.

4

On April 7, 2011, the Commission heard and granted the modification request. The City Council called the Commission's order up for review on July 25, 2011. On August 1, 2011, the City Council granted the request to eliminate Condition No. 3 (removing distilled spirits from the list of prohibited signal container products). However, the City Council denied the remaining requests to modify or eliminate the four other conditions. Condition No. 19 was modified to read: "'Business hours of operation shall be between 6:30 a.m. and 10:00 p.m. daily with the sale of alcohol to occur only between the hours of 8:00 a.m. and 9:00 p.m.'"

### *The First Amended Administrative Mandate Petition*

On October 4, 2011, appellants filed a first amended petition for administrative mandamus. The petition alleged that the City Council issued a decision which lacked findings upon which it based the determination to deny the modification requests as to Conditions Nos. 9, 10, 18 and 19.

The petition further alleged that the modification of Condition No. 19 violated the trial court's preliminary injunction, which permitted Super Liquor to return to normal hours with no temporal restrictions on the sale of alcohol. Appellants further alleged that the conditions imposed on Super Liquor were far more restrictive than those imposed on similarly situated businesses such that its equal protection rights were violated.

In support of the petition, appellants asserted that the Commission correctly granted the modification requests after finding there was no evidence of any nuisance activity at Super Liquor during the prior one-year period, which justified the conditions. The City Council disregarded evidence and legal standards. The City Council's decision to set aside the Commission's order was not supported by any evidence and lacked requisite findings.

On February 15, 2012, the trial court granted the petition in part on the ground the decision did not contain the requisite *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514–515 findings. The City was ordered to file a new decision making the findings. The City issued a new decision on April 2, 2012.

5

The City summarized the evidence it relied on in denying the modification requests. A neighbor, Laura Liptak, provided a letter and studies of the effect of liquor stores on a local neighborhood. She argued that "if we allow these regulations to be removed, the likelihood of crime increasing is significant." She testified at the July 25, 2011 hearing. She saw "prostitutes at night. . . . walking . . . through [her] property, throwing trash." She "currently . . . witnessed drug deals, gang fights, prostitution, and extreme violence." She submitted "five reports within the last ten years that basically prove that the density of liquor store outlets and violent crimes is a direct correlation."

A police department "Calls for Services Details Report" was submitted, which showed that within a 500 feet radius of Super Liquor, 190 calls for service from September 3, 2010 to July 21, 2011 were made. There were 86 noise violations, 58 disorderly conduct, 35 public drunkenness, 5 assaults and 6 other types of offenses. Police Lieutenant Kelly confirmed the report.

John Hutt, President of Engelmann Real Estate Services, submitted a letter which stated his company has property "kitty corner" to Super Liquor. He stated appellants' "business attracts loiterers and drunks and contributes to littering, pan-handling, public drunkenness, public urination and other nuisance activities." He felt that the prior imposed conditions had helped. He argued that the City should not backtrack and weaken the conditions imposed on Super Liquor but should reduce nuisances caused by neighboring liquor stores. His tenants "continue to find bottles and other litter with Super Liquor labels or with labels partially removed." He wrote that "[p]ublic drunkenness, vandalism, public urination and other nuisance activities continue." In addition, "[p]icking up trash and washing human defecation from our parking lot and lawn is a regular occurrence."

Terri MacQuarrie brought in "a nice big bag of trash from our local liquor stores." James MacQuarrie testified that there was "a big problem" with sales of liquor at 6:30 a.m. because the homeless shelters "let out" at 7:00 a.m. He testified that the homeless people "come" to the liquor store to get their "drunk on" for the day. Labeling bottles with stickers "is not intended to reduce the litter." Rather, it allowed the litter to

6

be identified. With respect to picking up trash in front of the store, he testified that the ABC prohibited loitering so the patrons would not drop trash in front of the liquor store. So, they went outside that area and littered. He testified that "you can't be an effective security guard if you're behind the register ringing people up."

Michael Chill testified that he lives "right around the corner from Super Liquor." The labels helped. He calculated that about 60 percent of the bottles were from Super Liquor, 40 percent had either peeled labels or were unmarked. He found "it curious that the same people who are afraid to leave the front of their business because of security issues want to provide their own security." He only brought in the trash. He did not "bring the urine and the defecation and the vomit," which was there. He did not "bring the broken beer bottles" that he had to sweep into the street or hose off the beer on his own. He confirmed that he collected the bottles in front of 735 N. Raymond Avenue.

Gretchen Palmer had three bottles that she picked up next to her car on the way to the public hearing. She has people sitting, drinking and smoking crack in front of her house. There was a "drunk" in front of her house who "couldn't get up" after they "tried to wake him up so many times." Super Liquor is connected to the nuisance in her neighborhood. She testified: "Every single day I have to push people off of my lawn drunk. Every single day. Think about that."

Vince Bertoni, the planning director, stated that there are some conditions that are consistently applied to similar establishments across the city. The conditions are customized to the individual situation. Picking up trash and litter not just on their site but adjacent sites has been done in several instances. The private security guard is also one of the conditions.

The City noted that appellants' counsel confirmed that Super Liquor was not abiding by the condition to employ a private security guard. Nor was Super Liquor abiding by the condition that required litter removal 100 feet from the premises. According to him, police told Super Liquor not to do so. As far as labeling, he stated: "I think it's four hours a day seven days a week that are attributable to just putting stickers on. Hard to believe . . . ."

7

The City cited comments from different Council members. Councilmember Holden noted, even if Super Liquor was moving in the right direction, it had a prior history. The modification request had to be viewed in the context of the prior history.

Councilmember Gordo noted the history of Super Liquor and the ABC decision, which found "the licensee knowingly permitted the illegal sale or negotiations of controlled substances or dangerous drugs upon his licensed premises." Super Liquor was brought to the City's attention by neighbors, businesses, police and ABC. The underlying acts were reported through surveillance and undercover investigations, including drug sales in front of the owners. The City had to subsidize the undercover police officers with ABC to discover what the neighbors had been saying was true for a number of years.

Councilmember Holden stated there was a connection or nexus where the types of products that were being sold are distilled spirits in small quantities at 6:30 a.m. There was a potential adverse impact "from an individual having the opportunity to purchase that kind of quantity of alcohol and going into the neighborhood and then maybe particularly creating some problems at—at that particular hour."

The City concluded the absence of formal complaints to enforcement and the absence of criminal activity directly attributable to Super Liquor did not require the modifications. Rather, the dearth of negative reports was evidence that the conditions worked not that they should be eliminated. The City found there was a nuisance problem in the surrounding neighborhood and with Super Liquor. The conditions are necessary to abate the nuisance and potential nuisance.

The City filed a return on the writ on April 12, 2012. After further briefing, the trial court denied the administrative mandamus petition on August 28, 2012 and entered judgment on September 18, 2012. Appellants filed a timely appeal.

**DISCUSSION**

I.      **Applicable Ordinances**

Super Liquor's operation was subject to the City's "Deemed Approved Alcoholic Beverage Retail Sale Ordinance." (PMC § 8.18 et seq.) The purpose of the ordinance is

8

to protect "the health, safety, comfort, convenience, prosperity, and general welfare of persons visiting, residing, working or conducting business in the city," which may be adversely affected by alcoholic beverage retail establishments which are nonconforming, under a conditional use permit. (PMC § 8.18.020.) Among other things, the ordinance regulates and enforces procedures to address community problems associated with alcohol sales and consumption such as litter, loitering, graffiti, unruly behavior and escalated noise levels. (PMC § 8.18.020(A).) The ordinance prevents "prohibited activities and activities contrary to deemed approved activities from becoming public nuisances." (PMC § 8.18.020(D).) The ordinance also "[ensures] such adverse impacts are monitored, mitigated and/or controlled such that they do not negatively contribute to the change in character of the areas in which they are located." (PMC § 8.18.020(E).)

Deemed approved activities must meet applicable performance standards and activities must not: result in adverse effects to the public or to abutting properties, result in nuisances or violate any laws. (PMC § 8.18.060(A)(1-5).) A business which is charged with violating the performance standards will be referred to the Commission. (PMC §§ 8.18.080, 8.18.090.) The Commission holds a public hearing conducted in accordance with Pasadena Municipal Code section 14.50.060 to determine whether the business is violating the performance standards. (PMC §§ 8.18.080, 8.18.090.) The Commission has authority to impose, add, or modify any reasonable conditions of approval which are necessary to ensure conformity with the performance standards. (PMC § 8.18.080(B)(1)(b).) The owner or operator has the right to appeal the Commission's decision. The City Council has authority to call up for review the Commission's decision. (PMC § 8.18.080(C).)

II.     **Standard of Review**

"In ruling on a petition for writ of administrative mandamus, the trial court reviews the administrative record to determine whether the agency's decision is supported by substantial evidence. [Citations.] The court must consider all relevant evidence in the record, but "'[i]t is for the agency to weigh the preponderance of conflicting evidence [citation]. Courts may reverse an agency's decision only if, based

9

on the evidence before the agency, a reasonable person could not reach the conclusion reached by the agency.'"' [Citations.] The standard of review for this court is identical: We, too, determine whether substantial evidence supports the administrative decision. [Citations.]" (*Eden Hospital Dist.* v. *Belshé* (1998) 65 Cal.App.4th 908, 915–916; see also *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 218.) De novo review is only appropriate if the decision rests solely upon the interpretation of the Ordinance, which is a question of law. (*Schneider v. California Coastal Com.* (2006) 140 Cal.App.4th 1339, 1343–1344; *Gilliland v. Medical Board* (2001) 89 Cal.App.4th 208, 219.)

### III.    Burden of Proof

Appellants contend that the trial court erred by giving them "an improper evidentiary burden not supported by Code of Civil Procedure section 1094.5 or any other legal standard."

There is a strong presumption of correctness given to administrative findings. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) "[T]he party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of evidence." (*Ibid*.) Because appellants are challenging the City's administrative decision, they have the burden of proving that the City's decision is contrary to the weight of evidence, unreasonable or unlawful. (*Wirth v. State of California* (2006) 142 Cal.App.4th 131, 138; *301 Ocean Ave. Corp. v. Santa Monica Rent Control Bd.* (1991) 228 Cal.App.3d 1548, 1556.)

According to appellants, the trial court confused the parties' burdens in deciding whether the City's decision denying the modifications should be set aside. The trial court initially addressed the burden of proof issue in its February 15, 2012 order granting the petition in part for *Topanga* findings. In its August 28, 2012 decision denying the mandate petition, the trial court restated its former burden of proof ruling. The trial court gave the following analysis. The trial court noted the City Council initially found Super Liquor to be a nuisance in July 2009. The nuisance finding and the facts supporting it are now conclusive. Neither the nuisance finding nor an evidentiary basis supporting it was

10

raised as issues in the first amended petition. Rather, the first amended petition related only to the August 1, 2011 decision concerning the modification of the operating conditions. The trial court found appellants waived any claims that the original nuisance finding or the original imposition of conditions were not supported by the evidence.

The trial court then ruled: "There is no need for [the] City again to find Super Liquor to be a nuisance. The store is a nuisance until the nuisance is abated. [¶] Because of the nuisance finding, [appellants] have the burden of establishing their entitlement to a modification of the conditions. The lack of nuisance activity over a one-year period is relevant to modification, but does not establish as a matter of law that the conditions must be modified. City imposed conditions on Super Liquor that were necessary to ensure conformity with the deemed approved performance standards. PMC §§ 8.18.060, 8.18.100. Having been found to be a nuisance, Super Liquor is not in the same position as other liquor stores in the area. The restrictions imposed on Super Liquor may be maintained in order to abate the nuisance unless they are no longer necessary. This is the inverse of [appellants'] claim that [the] City may maintain the conditions only if they are necessary. It may be that the imposed conditions are the very reason why [there were] no complaints or police reports against Super Liquor during the previous year. The City Council's July 25, 2011 Agenda Report made this very point. AR 144-3 (fact of no complaints 'is indicative that the preventative measures contained within the operating conditions are effective. . . .'). [¶] Thus, [appellants] bear the burden of proving that the City's decision not to modify the imposed conditions (except Condition No. 3) lacks substantial evidence because the conditions are no longer necessary to prevent Super Liquor from being a public nuisance."

The trial court concluded appellants failed to establish that, with the exception of Condition No. 3, the City's decision not to modify the imposed conditions "lacks substantial evidence because the conditions are no longer necessary to prevent Super Liquor from being a public nuisance."

It must be emphasized that appellants were requesting modification of five of 20 operating conditions, which had been imposed on January 25, 2010 to abate a public

11

nuisance. Thus, the burden of proof issue was raised at a stage of the proceedings where Super Liquor was an adjudicated nuisance. Moreover, contrary to appellants' assertions otherwise, the record clearly reflects that trial court did not improperly shift the burden of proof to appellants. Rather, the trial court merely reminded appellants that, given the unchallenged and final nuisance determination, appellants had to show a basis for relief under the Code of Civil Procedure. Code of Civil Procedure section 1094.5, subdivision (b) required appellants to show a prejudicial abuse of discretion by a showing error of law or the decision was not supported by the findings or the findings were not supported by evidence. In this case, because of the nuisance determination, appellants were required to show that the conditions were no longer necessary. Thus, the trial court correctly advised appellants they had the burden of showing the administrative findings (which were that the conditions are still necessary) were contrary to the weight of evidence given the nuisance decision.

## IV. Sufficiency of the Evidence

Appellants claim the judgment should be reversed because the City's decision to deny the modifications is not supported by the evidence. Appellants claim the decision was based on incompetent evidence including neighbors' statements, speculation and hearsay evidence which was presented during the administrative hearing. Generally, evidentiary rules are relaxed in public hearings in order to preserve the informal nature of the proceedings. (*Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 294–295 [nuisance abatement proceeding].) As a result, a party can present evidence to an administrative agency which would be inadmissible in a court. (*Carmel Valley View, Ltd. v. Board of Supervisors* (1976) 58 Cal.App.3d 817, 823.)

Appellants' real claim is that the modifications were warranted because of the absence of arrests, code enforcement complaints or ABC's disciplinary action for over two years. However, the absence of crimes, arrests or other violations does not establish the modifications were warranted as a matter of law. Indeed, as the City determined an inference can be made that the imposition of the operating conditions is what led to the decreased activity associated with the initial nuisance determination. In any event, in

12

rendering its decision, the City was not confined to considering only current activities concerning Super Liquor's operation. The City properly considered Super Liquor well-documented history of nuisance problems, which had jeopardized the public health and well-being, prior to the imposition of the conditions. (See *Suzuki v. City of Los Angeles* (1996) 44 Cal.App.4th 263, 273.)

We conclude that the judgment denying the administrative mandate petition must be affirmed. Substantial evidence supports the agency's decision to deny the modifications as requested. Moreover, appellants failed to meet their burden of establishing the administrative finding that the conditions were still necessary, was not supported by the weight of the evidence.

As to Condition No. 9, the City denied the request to modify the condition to remove the requirement to employ a "private security guard." Appellant Kum Man Jhae indicated he had obtained a security guard certificate. In denying the request, the City found: "[A] nuisance existed on the property and the employment of a private security guard is necessary to prevent continued nuisance activities. Further, the use of a store employee or family member would not be effective in abating the nuisance because employees would be distracted by responsibilities to work [the] cash register, stock items, etc. Family members or employees who have 'non-security guard' responsibilities would diminish the deterrent effect of the security guard . . . ."

The record supports the finding particularly in light of the prior history of Super Liquor. The evidence showed that drug sales were made during undercover law enforcement and ABC investigations in front of the owner and store employees. The conclusion that the owner or an employee would not be effective is reasonable and supported by substantial evidence. Appellants did not present any evidence that a security guard was no longer necessary. They only wanted to have the owner act as the security guard. This evidence does not defeat the City's determination that a private security guard is needed to abate the nuisance.

The City denied the request to modify Condition No. 10 to reduce the requirement to remove litter from within 100 feet to within 50 feet around Super Liquor. The City

13

found "litter in the area around the store and the adjoining neighborhoods is a pervasive problem as indicated by the testimony of numerous neighbors; that the litter is identified as having come from Super Liquor; and that in light of the pervasiveness of the litter problem, litter removal within 100 feet of the premises on the same side of Orange Grove as the business is necessary to assure that the nuisance created by identifiable litter generated by the business customers is reduced or eliminated."

Neighbors testified about the areas surrounding Super Liquor. The neighbors brought in bags of trash including alcohol bottles, which they found on their lawns. This was sufficient evidence that litter was still a pervasive problem in the surrounding neighborhood. Appellants offered no evidence that showed the restriction was no longer necessary.

Appellants' request to eliminate Condition No. 18 requiring labeling of alcoholic beverage containers and translucent bags was denied. The City found: "[L]itter in the area around the store and the adjoining neighborhoods is a pervasive problem as indicated by the testimony of numerous neighbors; that the litter is identified as having come from Super Liquor; that Super Liquor in Condition No. 10 is required to remove 'identifiable' litter; that the ability to identify where litter comes from helps the City to focus its limited resources in battling this problem; and that in light of the pervasiveness of the litter problem requiring the identification of alcoholic beverage containers and bags is needed to assure that such bags, bottles and cans are appropriately identified for removal."

The findings are supported by substantial evidence given testimonial evidence by neighbors concerning the need to pick up alcohol beverage bottles from their lawns. One neighbor testified that 60 percent of the bottles he picked up from his home lawn were labeled with Super Liquor stickers.

Appellants argue the trial court should have granted their mandate petition because the administrative agency's evidence did not show that the labeling requirement provided a "nexus" with any alleged abatement of a "purported nuisance" or abatement of litter. The problem with this contention is that the City, and prior to that, ABC, determined

14

Super Liquor's operation constituted a public nuisance. Because appellants failed to challenge the determinations and conditions of operation, they are bound by them under res judicata standards. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70–71; *Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 645.) Super Liquor has been adjudicated a public nuisance. Thus, at this stage of the proceeding, the City did not have to prove the effect of appellants' compliance or noncompliance with any of the operating conditions. More importantly, appellants have not provided any evidence that the labeling requirements are unreasonable or unnecessary to identify the litter problem. Appellants choose to ignore that the labeling condition was imposed as part of a prior adjudication that their operation of Super Liquor constituted a public nuisance. There is no evidence that the labeling is no longer necessary because the evidence shows there is still a major litter problem.

The City denied appellants' request to modify Condition No. 19, which limited hours of operation and hours when Super Liquor could sell alcohol. Business hours were limited to 7:00 a.m. to 9:00 p.m. with the sale of alcohol to occur between the hours of 9:00 a.m. and 6:00 p.m. daily. The City denied the request to eliminate the condition. However, the City modified the condition so that business hours are between 6:30 a.m. and 10:00 p.m. with the sale of alcohol to occur only between the hours of 8:00 a.m. and 9:00 p.m.

The City denied the request but modified the condition on the following basis. The City found: "In light of the testimony of neighbors who observed prostitutes at night, trespassers, trash, drug deals, gang fights, loitering, people drinking and smoking crack, public drunkenness, vandalism, and public urination, that there is a public nuisance; that the early morning sales of liquor and the late night sale of liquor contributes to that nuisance; and that eliminating the very early morning hours sale of alcohol and the late night sale of alcohol for a total of 2½ hour reduction of alcohol sales is reasonable."

15

Substantial evidence supports the findings. Neighbors testified about prostitution, vandalism, trespassing, trash, loitering, drunkenness and public urination. The City inferred that late night and early morning alcohol-related activities were linked.

Appellants assert the findings related to reduced operations is not supported because: they operated under normal hours of operation since the injunction was issued; there was no police activity or complaints at the property; other businesses sold alcohol without the hour restriction; the only evidence in support of the limitation was speculation by a neighbor about how early in the morning appellants wanted to sell alcohol to homeless shelter residents; councilmember's speculative conclusory statements about selling alcohol early in the morning created problems; the evidence suggests that Super Liquor's operation hours did not create problems; university studies were not relevant to Super Liquor's nuisance issue or a restriction on operating hours; the police report established that the calls for service were not related to Super Liquor's operation; and other evidence suggested that other liquor stores caused problems.

Again, none of appellants' arguments show that the restriction was not necessary to address Super Liquor's public nuisance issue. We note only that the injunction against the City was not permanent but preliminary. Furthermore, evidence was presented that early morning and late night alcohol related criminal and nuisance activity occurred in the surrounding neighborhood. So, an inference can be made that the injunction contributed to the public nuisance. In any event, the City's restrictions were reasonable under the circumstances.

In sum, appellants business has been adjudicated a public nuisance which subjected it to the imposition of a number of conditions of operation. Appellants have failed to demonstrate that the conditions imposed on their business Super Liquor's operations are unnecessary. Moreover, the City has demonstrated that its decision to deny the modification is supported by substantial evidence. Accordingly, the trial court did not err in refusing to set aside the City's denial of appellants' modification requests.

16

**DISPOSITION**

The judgment is affirmed.  The City is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

CHAVEZ

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.