[No. B003780. Second Dist., Div. One. May 15, 1985.]

DONALD T. STERLING, Plaintiff and Respondent, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and Appellant;
DOROTHY EARHART et al., Real Parties in Interest and Respondents.

COUNSEL

Michael Heumann, Stephen P. Wiman, Marsha Jones Moutrie, Barbara O'Hearn, Marla Kraus, Joel Martin Levy and Barbara Greenstein for Defendant and Appellant.

David M. Shell, Craig Mordoh and Thomas A. Nitti for Plaintiff and Respondent.

No appearance for Real Parties in Interest and Respondents.

OPINION

SPENCER, P. J.—

## INTRODUCTION

Defendant (hereafter respondent) Santa Monica Rent Control Board appeals from a judgment granting a peremptory writ of prohibition and prohibiting respondent from: (1) Adjusting maximum rents downward except for the purposes of article XVIII of the city charter, as set forth in section 1800, and the "failure on the part of the landlord to provide adequate housing services," such as decreases in living space, furniture, furnishings and parking; and (2) "awarding damages in the form of rent withholding to tenants, such authority having been granted expressly to the courts pursuant to California Constitution, Article VI, Section 1." The judgment further declares section 1805(d)(11) of article XVIII of the city charter and rent control board regulation section 4038 unconstitutional to the extent they "unlawfully delegate authority to respondent to award damages in the form of rent withholding." Respondent also appeals from the peremptory writ of mandate, which commands respondent "to permanently disist (*sic*) and refrain from taking any action or further proceedings in that action pending before you except in conformance with the Statement of Decision and Judgment of this Court."

STATEMENT OF FACTS

Real parties in interest in the superior court proceeding are tenants of plaintiff (hereafter petitioner) Donald T. Sterling, residing in an apartment complex in the City of Santa Monica. Real parties filed petitions with respondent rent control board, seeking rent decreases pursuant to sections 1805(c) and 1805(e) of article XVIII, on the ground that petitioner had failed to provide adequate housing services or to maintain real parties' rental units in a habitable condition and a state of reasonable repair.

Among other things, real parties based their petitions for rent decreases on the existence of defective built-in appliances, a defective elevator, defective plumbing, heating and electrical wiring, defective outside lights, insect infestation, broken windows and doors and gas leaks. Following three days of hearings on the consolidated petitions, respondent's hearing examiner rendered a decision on May 25, 1983, authorizing real parties prospectively to pay lower rents as a result of petitioner's failure to provide services and to maintain individual units and common areas in a habitable condition or in accord with housing, health and safety codes. The decision permitted petitioner to eliminate the decreases, restoring rents to their former level, upon proof of correction of the conditions leading to the decreases.

Petitioner appealed the hearing examiner's decision to respondent, after which respondent vacated the decision, disallowed any rent decreases authorized by the hearing officer and remanded the case for further administrative proceedings. A second administrative hearing was held before respondent's hearing examiner on August 30, 1984. No decision issued from this hearing, inasmuch as petitioner had petitioned the superior court for a writ of prohibition, obtained a stay of the hearing examiner's decision and obtained a ruling on August 2.

The superior court's statement of decision, signed and filed on September 15, 1984, contains the following pertinent conclusions: "The Court thus concludes that respondent has jurisdiction to adjust the maximum rents downward for any proper reason. This jurisdiction extends only to the establishment of a new maximum rent. . . . Article XVIII, Section 1805(e) sets forth general criteria to be considered in making individual adjustments of rent upward or downward. . . . Of the relevant factors listed in Section 1805(e), the Court is of the opinion that the purposes of Article XVIII (Section 1800) and the 'failure on the part of the landlord to provide adequate housing services' would constitute 'proper reasons' (relevant factors) for respondent to adjust rents downward . . . .

"The list of proper reasons does not include enforcing state and local health and safety laws or habitability problems. State and local, health and

safety laws are enforced by agencies other than respondent. The City of Santa Monica has adopted the health and safety laws for the city and has expressly delegated enforcement of all 'laws and ordinances regulating the construction and maintenance of buildings and other structures' to the Building Officer of the City of Santa Monica. . . . Tenant remedies for breach of the implied warranty of habitability, including Civil Code section 1941, . . . is through rent withholding subject to the court's determination of 'the reasonable rental value of the premises.' . . . Finally, as to such things as lack of painting, water leaks, dirty drapes, and loose kitchen cabinet knobs, they 'will not be considered in diminution of the rent.' . . .

"While the other factors listed in Section 1805(e) may be appropriate to limit and/or deny rent increases, these factors are inappropriate upon which to base a downward adjustment in rent. The Court is of the opinion that decreases in the maximum allowable rent must relate specifically to the purpose of Article XVIII.

"Finally, tenants who have minor maintenance or repair problems with a unit are authorized pursuant to Civil Code Section 1942 to repair any 'dilapidations rendering the premises untenantable, which the landlord ought to repair' and to 'deduct the expenses of such repairs from the rent when due'. Thus, tenant remedies for violations of health and safety code standards and for dilapidations are extensive, and nowhere is there any authorization for respondent to award damages in the form of rent withholding to enforce any such codes.

"The Court is of the opinion that adjusting maximum rents downward for the reasons set forth above is a proper exercise of the police power as long as it furthers the purposes of Article XVIII. Thus, decreases in the housing services described above should properly result in a reduction in rent 'so that rents will not be increased unreasonably' by such reduction in services. With regard to habitability questions and violations of state and local, health or safety laws, the Court is of the opinion that the purpose of these laws and provisions is to maintain suitable housing. This purpose is accomplished through enforcement by designated agencies and the courts. The Court therefore finds that these purposes are not accomplished by respondent authorizing rent withholding. . . .

"Having found that respondent has jurisdiction to adjust maximum rents downward for the proper reasons stated above, the final question is whether respondent, as a local agency, has jurisdiction to award damages to tenants in the form of rent withholding.

"Respondent's practice has been to adjust the maximum rent downward and subsequent to this determination expressly authorize tenants to pay the

reduced rent upon thirty days notice. This authorization is granted prior [to] the Board's determination or to judicial review of the Board's determination.

"Respondent has argued that Article XVIII, Section 1805(d)(11), and Rent Control Board Regulation Sections 4037 and 4038 establish a system for implementing downward adjustments in rent. To the extent that the above-referenced provisions conflict with this statement of decision they are invalid. The California Constitution and the laws of this State do not allow local agencies to perform judicial functions.

"Respondent also urges that Code of Civil Procedure Section 1094.5, authorizes the Superior Court to stay the Board's final decision. This section does not impact this Court's ruling. Respondent has no jurisdiction to award retroactive relief in the form of damages. By allowing a decision of a hearing examiner to take effect prior to Board review, respondent is effectively awarding retroactive relief. Claims by tenants for damages alleging excess rents paid may only be heard by the courts, and tenants' rights to recover excess rents paid are fully protected by the judicial process."

CONTENTS

I

Respondent contends the superior court erred in prohibiting respondent from utilizing all applicable criteria set forth in section 1805(e) as bases upon which to adjust maximum rents downward and in concluding state law preempts respondent's authority to decrease maximum rents in certain cases.

II

Respondent asserts the superior court erred and exceeded its jurisdiction in ruling that respondent's decisions as to rent decreases are stayed pending final adjudication on appeal on an across-the-board basis.

III

Finally, respondent avers the superior court erred and exceeded its jurisdiction in compelling respondent to follow its judgment in all pending and future rent decrease cases.

## DISCUSSION

### I

 Respondent contends the superior court erred in prohibiting respondent from utilizing all applicable criteria set forth in section 1805(e) as bases upon which to adjust maximum rents downward and in concluding state law preempts respondent's authority to decrease maximum rents in certain cases. There is merit to the contention.

 It is now established that rent control is a proper exercise of the municipal police power so long as it is "reasonably calculated to eliminate excessive rents" and at the same time provides the landlord with a just and reasonable return on his or her property. (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 165 [130 Cal.Rptr. 465, 550 P.2d 1001].) Moreover, this field of regulation is not occupied by general state law, thereby leaving each locality free to address individualized local conditions. (*Id.*, at p. 163.)

 The necessity of a power to decrease rents to effective rent control has been recognized implicitly in recent court decisions. *Carson Mobilehome Park Owners' Assn.* v. *City of Carson* (1983) 35 Cal.3d 184 [197 Cal.Rptr. 284, 672 P.2d 1297] addressed the constitutionality of criteria used to grant or deny a rent increase. The criteria were similar to those utilized in the Santa Monica Charter amendment and the Supreme Court reasoned: "The Carson approach allows the Board to ensure that rent increases are tied to the owners' actual costs and expenses, rather than to the average costs of the industry. It also permits consideration of property maintenance patterns in determining allowable increases. A change in general economic conditions, such as an increase in taxes, inflation, or the Consumer Price Index, might indicate that a general rent increase is in order. However, an increase might not be warranted for a particular [unit] if there has been a decrease in maintenance expenditures or a reduction in services provided to the tenant.[8] Indeed, to allow such a [unit] to take advantage of a general rent increase would be contrary to the legitimate governmental purpose of eliminating excessive rents. Also it would be unfair to those [units] which have not reduced tenant services." (*Id.*, at pp. 194-195.) Footnote 8 reads: "'Rent control would be self-defeating were landlords permitted to reduce maintenance expenditures and allow buildings to deteriorate because their profits have been regulated downward.' (*Orange Taxpayers Council* v. *City of Orange* (1979) 169 N.J. Super. 288 [404 A.2d 1186, 1193], affd. (1980) 83 N.J. 246 [416 A.2d 353].)" This reasoning applies with equal force to the power to decrease rents. If no condition has changed except the decrease in maintenance expenses or reduction in services, the rent pres-

ently being charged has become excessive, returning to the landlord a higher profit than had been previously adjudged fair.

*Cotati Alliance for Better Housing* v. *City of Cotati* (1983) 148 Cal.App.3d 280 [195 Cal.Rptr. 825] holds constitutionally valid guidelines virtually identical to those at issue in the instant case. The opinion notes the dual concerns of rental control, stating: "The purpose of rent control is to permit an efficient landlord to pay all actual and reasonable expenses and receive a fair profit while, at the same time, protecting the public interest in having *affordable* and *properly maintained* rental housing available to the citizens of the community." (*Id.,* at p. 296; italics added.) Absent a power to decrease rents in the face of a substantial deterioration of the maintenance of a rental unit or a reduction in services, a rent control board lacks the tools with which to give full weight to the interests of the renting public.

Contrary to petitioner's position, there is no issue of a more particularized preemption with respect to conditions which constitute breaches of the implied warranty of habitability or violations of housing, health and safety codes. The board does not seek to enforce either the implied warranty or the codes when it hears and determines petitions for rent decreases. Such conditions simply are included among the guidelines the board is to use in determining whether a rent decrease is warranted.

Section 1805(e) of the rent control charter amendment, article XVIII, provides: "In making individual and general adjustments of the rent ceiling, the Board shall consider the *purposes* of this Article and shall specifically consider *all relevant factors* including but not limited to increases or decreases in operating and maintenance expenses, capital improvement of the controlled rental unit as distinguished from normal repair, replacement and maintenance, increases or decreases in living space, furniture, furnishings or equipment, substantial deterioration of the controlled rental unit other than as a result of ordinary wear and tear, failure on the part of the landlord to provide adequate housing services or to comply substantially with applicable housing, health and safety codes, federal and state income tax benefits, the speculative nature of the investment, whether or not the property was acquired or is held as a long term or short term investment, and the landlord's rate of return on investment. It is the intent of this Article that *upward* adjustments in rent be made only when demonstrated necessary to the landlord's making a fair return on investment." (Italics added.)

It is clear that *each* factor enumerated in section 1805(e) is directly relevant to the increased or decreased comparative rate of return on the landlord's investment as affected by his costs or benefits. Since references to "substantial deterioration" of the unit and to "violations of housing, health

and safety codes" provide indicia relating to the comparative return on investment and that is one of the primary purposes of the power to decrease rents, there is no impermissible attempt to "enforce" habitability warranties or housing, health and safety codes. Indeed, no enforcement is sought. The landlord has a choice—he may elect to remedy the defects and seek the restoration of the higher rent or he may accept the downward adjustment in the maximum rent to be charged, leaving conditions unchanged, pending the involvement of one of the enforcing agencies.

Moreover, neither the judicially created implied warranty of habitability and its concommitant remedy nor Civil Code section 1942 evince any intent that state law shall preemptively occupy this area. Subdivision (d) of section 1942 expressly provides: "The remedy provided by this section is in addition to any other remedy provided by this chapter, the rental agreement, or other applicable statutory or common law." (See also *Knight* v. *Hallstham-mar* (1981) 29 Cal.3d 46, 53-54 [171 Cal.Rptr. 707, 632 P.2d 268].) The implied warranty of habitability was created so that the breach thereof would provide a defense to unlawful detainer actions for nonpayment of rent. (*Ibid.*) There is nothing in the judicial history of the warranty to suggest that local governments adopting rent control schemes are preempted from taking into account habitability problems in adjusting allowable rents.

Insofar as a petition to reduce the allowable rent ceiling on a unit may be considered a remedy at all, it is a statutory one well within the purview of a rent control scheme. Since section 1942 and the judicial remedy provided for a breach of the implied warranty of habitability impose no barrier to the creation of local statutory remedies within the confines of a rent control scheme, respondent properly may consider as bases for rent decreases "substantial deterioration of the controlled rental unit other than as a result of ordinary wear and tear," as well as "failure on the part of the landlord . . . to comply substantially with applicable housing, health and safety codes," in addition to those bases recognized by the superior court as permissible.

█ In addition, it is apparent the superior court construed too narrowly the purposes of article XVIII. Respondent properly may consider "increases or decreases in operating and maintenance expenses" in determining whether a rent decrease should be granted. Section 1800 states: "The purpose of this Article, . . . is to alleviate the hardship caused by this serious housing shortage by establishing a Rent Control Board empowered to regulate rents in the City of Santa Monica so that rents will not be *increased unreasonably* and so that landlords will receive *no more* than a fair return on their investment." (Italics added.) This is consistent with the statement of intent in section 1805(e) that *increases* be granted only when necessary to a fair return. Since a landlord may increase his rate of return (and hence have the

*effect* of increasing rents) by failing to make repairs or to correct defective conditions, by reducing services, space or equipment or by permitting deterioration of the unit, the stated purpose of article XVIII is broad enough to justify decreasing rents for the existence of any of these conditions.

In sum, the superior court erred in concluding that conditions amounting to substantial deterioration (i.e., breach of the implied warranty of habitability) or violations of housing, health and safety codes may not be considered as a basis for rent decreases. These represent nothing more than relevant indicators of the comparative return on investment rather than an attempt at extra-administrative or extrajudicial "enforcement" of rights. The superior court further erred in excluding from the enumeration of "proper purposes" for which maximum allowable rents may be decreased "decreases in operating and maintenance expenses." Any and all factors indicating a decrease in operating or maintenance expenses, including a reduction in the frequency of painting or the failure to make minor repairs which were made formerly, properly may be considered.

## II

■ Respondent asserts the superior court erred and exceeded its jurisdiction in ruling that respondent's decisions as to rent decreases are stayed pending final adjudication on appeal on an across-the-board basis. This assertion also has merit.

Contrary to the view of the superior court, there is not any question in the instant matter of an unconstitutional exercise of judicial power or of the awarding of damages. In all cases, respondent's determinations are prospective in nature. Tenants are not authorized to withhold rent as compensation for the landlord's failures; respondent's hearing officer makes a factual determination, on the evidence, of the appropriate maximum allowable rent to be charged in the *future* only. ■ An administrative body may make factual determinations so long as those determinations are subject to judicial review. (See *Stearns* v. *Fair Employment Practice Com.* (1971) 6 Cal.3d 205, 211 [98 Cal.Rptr. 467, 490 P.2d 1155].) ■ Respondent's decisions are subject to judicial review via administrative mandamus. (Code Civ. Proc., §§ 1094.5, 1094.6; *Campbell* v. *Residential Rent Stabilization & Arbitration Bd.* (1983) 142 Cal.App.3d 123 [190 Cal.Rptr. 829].)

The procedure for review by administrative mandate itself provides a means for the imposition of a stay in an appropriate case. Subdivision (g) of Code of Civil Procedure section 1094.5 provides in pertinent part: ". . . the court in which proceedings under this section are instituted may stay the operation of the administrative order or decision pending the judgment of

the court, or until the filing of a notice of appeal from the judgment or until the expiration of the time for filing such notice whichever occurs first; provided that no such stay shall be imposed or continued if the court is satisfied that it is against the public interest; . . . ."

By its clear language, the power to stay a decision pending review which subdivision (g) grants is not absolute; the provision mandates that no stay be imposed when a stay would be against the public interest. Hence, it unequivocally requires that the superior court weigh the public interest in each individual case. This comports fully with the "inherent power" of each superior court "to exercise reasonable control over litigation before it . . . ." (*Venice Canals Resident Home Owners Assn.* v. *Superior Court* (1977) 72 Cal.App.3d 675, 679 [140 Cal.Rptr. 361].) Accordingly, insofar as the instant order imposes a blanket stay throughout the review process on all rent decrease determinations, it usurps the power of the court before which such a determination is reviewed to implement the mandate of Code of Civil Procedure section 1094.5, subdivision (g), in the exercise of its inherent discretion.

However, insofar as the instant judgment purports only to prohibit the enforcement of rent decrease determinations in the underlying proceedings against petitioner until respondent's decision is final, we perceive no abuse of discretion. It is respondent who possesses the power to adjust rents; the hearing officer is merely the preliminary fact finder. Moreover, the delay between a hearing officer's decision and respondent's determination on appeal is brief; in the instant matter, the board rendered its decision in slightly more than 30 days. Hence, no great prejudice to real parties would result from a stay.

### III

Finally, respondent avers the superior court erred and exceeded its jurisdiction in compelling respondent to follow its judgment in all pending and future rent decrease cases. ■ In the absence of a certified class declaratory action, those portions of a judgment which purport to decide issues with respect to all pending and future actions, rather than simply the one then before the court, are beyond the jurisdiction of the court. (*Bayside Manor, Inc.* v. *City of Santa Monica* (1983) 141 Cal.App.3d 51, 53 [190 Cal.Rptr. 76].) Consequently, the superior court did exceed its jurisdiction in purporting to bind respondent in all pending and future rent decrease cases.

The judgment is reversed and the peremptory writ of prohibition is vacated. The superior court is directed to enter a new and different judgment

consistent with the views expressed in this opinion and to issue a peremptory writ of prohibition only insofar as such may be consistent with this opinion.

**HANSON (Thaxton), J.**—We reluctantly concur. Under the standard of review applicable to police power regulations as set forth in cases such as *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 158-160 [130 Cal.Rptr. 465, 550 P.2d 1001], we are compelled to uphold the validity of the charter amendment in question since it is reasonably related to its stated purpose.

We are constrained to state our deep seated concern with the growing trend of chipping away at the most fundamental concept of our economic system (i.e., the private ownership of property) in the name of the "public peace, safety, morals, health and welfare."

The private ownership of property distinguishes capitalism from the other economic systems in the world. While such police power regulations merely regulate the use as distinguished from the ownership of property, the uses to which a person may put his property are becoming increasingly confined. (See, e.g., *Nash* v. *City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894], wherein the court upheld the validity of another section of the ordinance in question which prohibits an owner of units subject to rent control from removing those units from the market by demolition or conversion unless he first obtains permission, under rigorous guidelines, from the Santa Monica Rent Control Board.)

In our view, such police power regulations are shortsighted and threaten to "kill the goose that laid the golden egg." The increasing number of rent control ordinances force owners of existing rental units to either remain indefinitely in the rental business with others dictating management, or sell their property at less than true value due to the rent control cloud hanging over their property. Also, the increasing number of such rent control ordinances must have the effect of serving as a disincentive for the construction of additional rental units.

In his petition for rehearing, Sterling argues that our prior disposition of this case was erroneous since the State Housing Law (Health & Saf. Code, § 17910 et seq.) preempts the field of health and safety regulation. Health and Safety Code section 17922, subdivision (f) provides: "No local ordinance may permit any action or proceeding to abate violations of regulations governing maintenance of existing buildings, unless the building is a substandard building or the violation is a misdemeanor." Health and Safety Code section 17960 provides that the State Housing Law is to be enforced by the city building department.

Sterling argues that our prior disposition permits a landlord to fail to comply with the State Housing Law or the warranty of habitability provided the landlord accepts a reduction in rent.

The fallacy in Sterling's argument is that the charter amendment is not trying to enforce health code standards but rather its focus is to ensure that excessive rents are not charged. As pointed out by the lead opinion, a rent reduction in no way prevents the appropriate agency from enforcing health code standards.

Regarding the warranty of habitability, Civil Code section 1942, subdivision (d) states: "The remedy provided by this section is in addition to any other remedy provided by this chapter, the rental agreement, or other applicable statutory or common law." Since charter amendments are accorded the dignity of statutes (Cal. Const., art. XI, § 3, subd. (a); 45 Cal.Jur.3d Municipalities, § 58, p. 111), it is clear that Civil Code section 1942 does not preempt the remedy provided by the charter amendment in question.

If preemption in this field is to be declared, it is a task for the Legislature and not the judiciary.

Leetham, J.,* concurred.

The petition of plaintiff and respondent for review by the Supreme Court was denied August 21, 1985. Mosk, J., was of the opinion that the petition should be granted.

*Assigned by the Chairperson of the Judicial Council.