[No. B227868. Second Dist., Div. Eight. Feb. 16, 2012.]

SANTA MONICA PROPERTIES, Plaintiff and Appellant, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and Respondent.

742

COUNSEL

Law Offices of David R. Akin and David R. Akin for Plaintiff and Appellant.

Michaelyn Jones and Amy J. Regalado for Defendant and Respondent.

## OPINION

**BIGELOW, P. J.**—After taking more than a year to issue a final decision, the Santa Monica Rent Control Board (RCB) decreased two tenants' rents because their landlord, Santa Monica Properties (SMP), lowered the temperature on a hot tub during workday hours, heating it only during evening hours, and altered a sauna's timer knob so that the sauna heated for one-half hour at a turn instead of the previous one hour. SMP filed a petition for writ of administrative mandate challenging the rent decrease decision. In the same pleading, SMP sought a petition for writ of traditional mandate to compel RCB to adopt regulations establishing administrative remedies to be applied in the event RCB fails, as it did here, to issue a final decision in a rent adjustment proceeding within 120 days as required by the Santa Monica City Charter, article XVIII, section 1800 et seq., Rent Control Charter Amendment, hereafter the rent control law (RCL).[1] The trial court entered judgment for RCB. We reverse the judgment as to SMP's petition for writ of administrative mandate, and remand the cause to the trial court with directions to enter judgment in favor of SMP. We affirm the judgment as to SMP's petition for writ of traditional mandate.

## FACTS

### The Rent Decrease Proceeding

SMP owns a 32-unit apartment building that is subject to RCB's jurisdiction pursuant to the RCL. Under section 1805(a) and (b), RCB is empowered to make general adjustments, annually or upon a noticed public hearing, of the "rent ceiling"—the "maximum allowable rent which a landlord may charge on any controlled rental unit." (§ 1801(k).) Under section 1805(c), RCB may, upon a tenant's petition, decrease the "maximum rent of individual controlled rental units."[2]

On January 31, 2008, a tenant in SMP's apartment building, R. Liza Salvatore, filed a "Petition for Rent Decrease" with RCB. (No. D-4392.) The petition alleged that a decrease in her monthly rent (then $1,214.25 for a two-bedroom, two-bathroom, 1,200-square-foot unit) was justified because SMP had reduced housing services by changing the hours that the property's Jacuzzi was heated, from 9:00 a.m. to 9:00 p.m., down to 5:00 p.m. to 9:00 p.m.; and by installing a sauna timer that "reduced greatly" the length of time

---

[1] All section references are to the RCL.

[2] Section 1805(e) prescribes factors which RCB "shall" consider in making individual and general adjustments to the rent ceiling. Section 1805(e) is discussed more fully below in addressing SMP's arguments on appeal.

that the sauna would stay heated "from 1 hr to 25 min."[3] On March 10, 2008, another tenant, Roberta Rosskam, also filed a "Petition for Rent Decrease." (No. D-4396.) The petition alleged that a decrease in her monthly rent (then $1,440.33 for a two-bedroom, two-bathroom, 1,300-square-foot unit) was justified because SMP had reduced housing services by changing the hours that the property's Jacuzzi was heated, from 9:00 a.m. to 9:00 p.m., down to 5:00 p.m. to 9:00 p.m., and by installing a sauna timer that "reduced significantly" the length of time that the sauna would stay heated "from 1 hr to 25 min."[4] In late March 2008, RCB consolidated the rent decrease petitions. "[O]n several occasions" prior to the hearing on the petitions, a hearing investigator employed by RCB went to SMP to inspect the operation of the hot tub and sauna.

On July 8, 2008, and July 31, 2008, an RCB hearing examiner heard evidence on the consolidated rent decrease petitions. The following witnesses testified at the hearing: tenants Rosskam and Salvatore; SMP's manager; and the RCB hearing investigator. On October 14, 2008, the hearing examiner issued a 99-page decision ordering a decrease in rent of $48 per month to tenant Salvatore, beginning effective December 1, 2008, and measured as follows: a $3-per-month decrease because SMP had removed the name of Salvatore's business from the building's directory, a $25-per-month decrease related to the hot tub ("reduction of hours Jacuzzi heated"); and a $20-per-month decrease related to the sauna ("defective timer/inadequate heat"). The hearing examiner granted a rent decrease of $25 per month to tenant Rosskam effective beginning December 1, 2008, related to the hot tub ("reduction in hours for heat").

The hearing examiner's rent reduction decision set forth 58 separate "Findings of Fact and Conclusions of Law," including the following:

"54. [Tenants Salvatore and Rosskam] are entitled to a rent decrease based upon the landlord's failure to remedy the conditions set forth below. The landlord's failure to remedy these conditions represents a *failure to provide adequate housing services* which were included in the base rent. The following monthly decreases are granted:

---

[3] Salvatore's petition also alleged a number of maintenance-related conditions justifying a rent reduction. Those matters were resolved or are outside the issues in the current appeal. For example, RCB did not order a rent decrease based upon a complaint that SMP turned off the gas to a decorative fireplace; RCB concluded that, under an order issued by California's Public Utilities Commission, and a judgment in a previous superior court action, SMP had acted properly in stopping delivery of gas for use in decorative fireplaces such as the one in Salvatore's unit.

[4] As did Salvatore's petition, Rosskam's petition also alleged several maintenance-related conditions justifying a rent decrease. As noted, those matters are not at issue in the current appeal.

"[Tenant Salvatore]

| "Condition | Amount |
|---|---|
| "1. Removal of tenant's company name from Building directory | $3 |
| "2. Reduced housing services | |
|     "A. Recreational facilities | |
|         "1. Jacuzzi (reduction of hours jacuzzi heated) | $25 |
|         "2. Sauna (defective timer/inadequate heat) | $20 |
| Total | $48 |

"[Tenant Rosskam]

| "Condition | Amount |
|---|---|
| "1. Reduced housing services | |
|     "A. Recreational facilities | |
|         "1. Jacuzzi (reduction in hours for heat) | $25 |

"55. The amounts of $48 [(as to tenant Salvatore)] and $25 [(as to tenant Rosskam)] are reasonable decreases to accomplish the purposes of the [RCL], including providing owners no more than a fair return on their properties and providing effective remedies for violations of the [RCL] . . . ." (Italics added.)

On October 17, 2008, SMP tenant Salvatore filed an administrative appeal to RCB, challenging the hearing examiner's decision not to reduce her rent further based on SMP's shutoff of gas for her decorative fireplace. (See fn. 3, *ante*.) On October 27, 2008, SMP filed an administrative appeal to RCB, challenging the rent decreases which the hearing examiner had ordered. The appeals were eventually set on calendar for hearing at the meeting of RCB scheduled for April 23, 2009. On April 9, 2009, RCB's legal department issued a "Staff Report On Appeal" to RCB, recommending that the hearing examiner's decision be affirmed, with the exception of the $3-per-month reduction in rent ordered for removing the name of Salvatore's business from the property's directory.

On April 23, 2009, Salvatore and SMP argued their respective appeals to RCB. During the hearing, there were significant exchanges between different board members and SMP's manager on whether a timer could be placed on the hot tub so that it could be heated in an hour, and not heated continuously between 9:00 a.m. and 5:00 p.m. SMP agreed that this could be done. At the end of the hearing, RCB voted to affirm the hearing examiner's decision, except for the rent decrease of $3 per month ordered for removing the name of Salvatore's business from the property's directory.

On April 28, 2009, RCB issued its notice of decision on Salvatore's and SMP's appeals. RCB reversed the $3-per-month rent decrease ordered as to tenant Salvatore based on removing the name of her business from the property's directory. RCB affirmed the reduction in rents to tenants Salvatore and Rosskam based on the changes that SMP had implemented as to the hot tub and sauna. RCB directed that the following provision be added to the Findings of Fact and Conclusions of Law set forth in the hearing examiner's decision:

"59. In determining compliance for the Jacuzzi . . . and sauna . . . , the hearing officer will consider alternative means of achieving base-date levels of service."

Shortly after the decision of RCB on appeal, SMP installed a timer on the hot tub. On May 19, 2009, SMP filed a request with the hearing examiner for a decision on SMP's compliance with his rent reduction decision, as modified by RCB. Pared down to its core, SMP's request included a showing that it had installed a timer on the hot tub that would enable tenants to heat the water in an hour so that it could be used between the hours of 9:00 a.m. and 9:00 p.m. as it was prior to SMP's decision not to heat the hot tub during working hours. As to the sauna, SMP stated it had not returned the timer to its prior one-hour setting because it still had concerns that it was not safe for a person to be in the sauna for more than 15 minutes; SMP indicated it would keep the timer set for one-half hour. On June 26, 2009, the hearing examiner issued a decision finding SMP to be in partial compliance with the rent reduction decision based on its showing that it had installed a timer on the hot tub allowing it to be used by tenants Salvatore and Rosskam as before. The hearing examiner's compliance decision reinstated the rent that was ordered decreased related to the hot tub, effective June 1, 2009. The $20 rent reduction granted to tenant Salvatore related to the sauna remained in effect.

On July 1, 2009, SMP filed a request with the hearing examiner for a hearing on his compliance decision. SMP objected to the reinstatement of prior rents only as of June 1, 2009, arguing that the decrease in rents which had been ordered in the hearing examiner's October 2008 decision "should be removed entirely" from the decision pursuant to section 1805(d)(11).[5] SMP's apparent position was that rent should have been reinstated effective as of December 2008, not June 2009. As matters were viewed by SMP, the

---

[5] Section 1805(d)(11) provides: "The decision of the hearing examiner shall be the final decision of [RCB] in the event of no appeal to [RCB]. [In the event an appeal is filed, the] decision of the hearing examiner shall not be stayed pending appeal; however, in the event [RCB] on appeal reverses or modifies the decision of the hearing examiner, the landlord, in the case of an upward adjustment in rent, or the tenant, in the case of a downward adjustment of rent, shall be ordered to make retroactive payments to restore the parties to the position they would have occupied had the hearing examiner's decision been the same as that of [RCB]."

decision by RCB on appeal effectively reversed the hearing examiner's rent reduction decision because the original decision had not given SMP the option of putting a timer on the hot tub, but rather, had required SMP to heat the hot tub 12 hours every day. Tenant Salvatore also filed a request for a hearing on the hearing examiner's compliance decision; she claimed that SMP still had not complied with RCB's rent reduction decision because the hot tub was "not hot enough." More specifically, Salvatore objected that the hot tub with the new timer would only reach "100° F" while the "recommended . . . temperature for therapeutic use [is] between 104° to 107° F." On July 8, 2009, the hearing examiner sent letters to both parties stating that no hearing would be held on their objections to his compliance decision.

*The Writ Proceeding in the Trial Court*

On July 21, 2009, SMP filed a petition for writ of administrative mandate to review RCB's final rent decrease decision. SMP's pleading also included a petition for writ of traditional mandate to compel RCB to comply with section 1805(d)(12), which requires that RCB adopt regulations which "shall provide for final action on any individual rent adjustment petition within . . . (120) days . . . ." Although not a model pleading, it appears that SMP prayed for a traditional writ of mandate commanding RCB to adopt regulations establishing administrative remedies, e.g., a loss of jurisdiction, when RCB fails to issue a final decision in a rent reduction proceeding within the 120-day time limit prescribed in section 1805(d)(12).

On June 28, 2010, the trial court issued a tentative ruling in favor of RCB on both of SMP's writ petitions. On June 29, 2010, the court heard arguments, following which it adopted its tentative ruling as its final order. On July 21, 2010, the trial court entered judgment in favor of RCB in accord with the court's final order.

SMP filed a timely notice of appeal.

## DISCUSSION

I. *The Standard of Judicial Review in the Trial Court*

SMP contends the judgment as to its petition for writ of administrative mandate must be reversed because the trial court erred by limiting the scope of judicial review to an examination of whether substantial evidence in the administrative record supported the factual findings set forth in RCB's final administrative decision. It is SMP's position that the trial court should have addressed and determined whether RCB failed to "proceed in the manner required by law." Stated differently, SMP argues the trial court should have

addressed and determined SMP's allegation that RCB's final administrative decision had been reached pursuant to invalid regulations and/or incorrect interpretations of law. On this point, SMP has not persuaded us that the judgment must be reversed.

■ A trial court may, in an administrative mandamus proceeding, review the validity of an agency's regulations or the agency's legal interpretation of constitutional, statutory or regulatory provisions. (*Woods v. Superior Court* (1981) 28 Cal.3d 668, 678 [170 Cal.Rptr. 484, 620 P.2d 1032]; see also *Ocean Park Associates v. Santa Monica Rent Control Bd.* (2004) 114 Cal.App.4th 1050, 1061–1062 [8 Cal.Rptr.3d 421] (*Ocean Park*).) SMP's petition for writ of administrative mandate alleged that RCB had unlawfully delayed its final decision beyond the 120-day time limit established by the RCL, and had based its final decision on an incorrect interpretation of law.

SMP argues the trial court, in ruling on SMP's petition for writ of administrative mandate, erred by circumscribing its consideration of the petition to an application of the substantial evidence standard of review to RCB's factual findings. Although we agree with SMP that there is significant language in the court's written decision showing the court's focus on the evidence that supported RCB's factual findings, we reject SMP's position that the record demonstrates the court addressed SMP's petition *solely* as a matter involving the substantial evidence standard of judicial review. The trial court's written decision also includes language showing that the court considered SMP's legal claim that RCB's final administrative decision was "based on an incorrect interpretation of the [RCL]." In other words, the trial court's written decision shows it addressed SMP's petition on two fronts: (1) whether the administrative record disclosed substantial evidence supporting RCB's factual findings and (2) whether RCB correctly interpreted and applied the law in ordering a decrease in rents. Accordingly, we decline to reverse the judgment based on SMP's claim that the trial court erred by applying an incorrect standard of judicial review in addressing SMP's petition.

## II. *Statutory Interpretation*

SMP contends the judgment as to its petition for writ of administrative mandate must be reversed because the trial court misinterpreted section 1805(e), and *Sterling v. Santa Monica Rent Control Bd.* (1985) 168 Cal.App.3d 176 [214 Cal.Rptr. 71] (*Sterling*), in confirming RCB's decision to decrease rents. We agree.

*The RCL*

Section 1800 provides: "Statement of purpose. [¶] A growing shortage of [rental] housing units resulting in a low vacancy rate and rapidly rising rents

exploiting this shortage constitute a serious housing problem affecting the lives of a substantial portion of those Santa Monica residents who reside in [rental] residential housing. In addition, speculation in the purchase and sale of existing [rental] residential housing units results in further rent increases. These conditions endanger the public health and welfare of Santa Monica tenants, especially the poor, minorities, students, young families, and senior citizens. *The purpose of this Article . . . is to alleviate the hardship caused by this serious housing shortage by establishing a Rent Control Board empowered to regulate rentals in the City of Santa Monica so that rents will not be increased unreasonably and so that landlords will receive no more than a fair return. . . .*" (Italics added & boldface omitted.)

Section 1805 governs "Individual and general adjustments of ceilings on allowable rents." Section 1805(e) prescribes various factors, in the form of both a mandatory nature, and a nonexhaustive, illustrative nature, to be considered in making a rent adjustment; it provides: "In making individual and general adjustment[s] of the rent ceiling, the Board *shall consider the purposes of this Article and the requirements of law.* The Board may adopt as its fair return standard any lawful formula, including but not limited to one based on investment or net operating income. The Board shall consider all factors relevant to the formula it employs; such factors may include: [(1)] increases or decreases in operating and maintenance expenses, [(2)] the extent of utilities paid by the landlord, [(3)] necessary and reasonable capital improvement of the controlled rental unit as distinguished from normal repair, replacement and maintenance, [(4)] *increases or decreases in living space, furniture, furnishings, equipment, or services,* [(5)] substantial deterioration of the controlled rental unit other than as a result of ordinary wear and tear, [(6)] *failure on the part of the landlord to provide adequate housing services* or to comply substantially with applicable housing, health and safety codes, [(7)] Federal and State income tax benefits, [(8)] the speculative nature of the investment, whether or not the property was acquired or is held as a long term or short term investment, [(9)] the landlord's rate of return on investment, [(10)] the landlord's current and base date Net Operating Income, and [(11)] any other factor deemed relevant by [RCB] in providing the landlord a fair return." (Italics & brackets added.)

*Sterling*

In *Sterling, supra,* 168 Cal.App.3d 176, Division One of our court reviewed and reversed a judgment granting peremptory writs of prohibition and mandate. The thrust of the judgment prohibited RCB from adjusting maximum allowable rents *downward* except in accord with the purposes of the RCL as specified in section 1800, and based only on one factor listed in section 1805(e), namely, the " 'failure on the part of the landlord to provide

adequate housing services.' " (*Sterling*, at p. 180.) The judgment ensued from the trial court's interpretation that the remaining factors listed in section 1805(e), which the court broadly summarized as a landlord's failure to comply with " 'health and safety laws or habitability problems,' " did not give RCB the authority to *decrease* rents because claims involving such factors were reserved for court proceedings and/or for the agencies charged with enforcing health and safety codes. (*Sterling*, at p. 180.) The trial court ruled that, while the factors listed in section 1805(e) could be considered in limiting or denying a rent *increase*, they could not be considered in a rent *decrease* context unless they " 'relate[d] specifically' " to the purposes of the RCL. (*Sterling*, at p. 181.)

Division One reversed the judgment, ruling the trial court had unduly limited the authority vested in RCB under the RCL: "[T]he superior court erred in concluding that conditions amounting to substantial deterioration (i.e., breach of the implied warranty of habitability) or violations of housing, health and safety codes may not be considered as a basis for rent decreases. These represent nothing more than relevant indicators of the [landlord's] comparative return on [his or her] investment rather than an attempt at . . . 'enforcement' of [tenants'] rights. The superior court further erred in excluding from the enumeration of [the RCL's] 'proper purposes' for which maximum allowable rents may be decreased 'decreases in operating and maintenance expenses.' Any and all factors indicating a decrease in operating or maintenance expenses, including a reduction in the frequency of painting or the failure to make minor repairs which were made formerly, properly may be considered." (*Sterling, supra*, 168 Cal.App.3d at p. 186.)

In ruling that the RCL empowered RCB to *decrease* rents based on the factors listed in section 1805(e), Division One offered this reasoning: "If no condition has changed except [a] decrease in maintenance expenses or [a] reduction in services, the rent presently being charged has become excessive, returning to the landlord a higher profit than had been previously adjudged fair." (*Sterling, supra*, 168 Cal.App.3d at pp. 183–184.) And, in the same vein: "Since a landlord may increase his rate of return . . . by failing to make repairs or to correct defective conditions, by reducing services, space or equipment or by permitting deterioration of the unit, the stated purpose of [the RCL] is broad enough to justify decreasing rents for the existence of any of these conditions." (*Id.* at pp. 185–186.)

*The Trial Court's Ruling*

In denying SMP's petition for writ of administrative mandate, the trial court first noted that section 1805(e) governs RCB's authority to decrease a tenant's rent. We agree that RCB's authority to decrease rents is a settled

matter (see *Sterling, supra*, 168 Cal.App.3d 176), subject, of course, to the factors identified in section 1805(e). The trial court next addressed SMP's more narrowly tailored argument that the decreases in rents ordered by RCB in the current rent adjustment proceeding were flawed because they were not shown to be related to "the purposes of the [RCL]" within the meaning of section 1805(e). According to SMP, a decision by RCB to reduce rents under section 1805(e) had to be based on evidence showing that SMP actually "reduced its operating expenses and/or increased its profits by decreasing the heating time of the hot tub and sauna." In short, SMP argued that, under a proper interpretation of section 1805(e), RCB's decision to decrease rents had to be based on more than a mere showing that there had been a "minimal" decrease in services to tenants.

The trial court rejected the interpretation proffered by SMP for the following reasons: "[A]s noted by [RCB] in the opposition, any amount of reduction of services is a factor to be considered under *Sterling*; the case does not carve out an exception for 'minimal' reductions in services. As set forth in *Sterling*: [¶] 'If no condition has changed except the decrease in maintenance or reduction in services, the rent presently being charged has become excessive, returning to the landlord a higher profit than had been previously adjudged fair.' [(*Sterling, supra*, 168 Cal.App.3d at pp. 183–184.)]" Read from a different angle, the trial court implicitly interpreted section 1805(e) to mean that RCB may decrease a tenant's rent whenever there is a decrease in any service, even a luxury, adult recreational service, no matter how slight.

*Analysis*

We agree with SMP that the trial court misinterpreted section 1805(e), and *Sterling, supra*, 168 Cal.App.3d 176, and that the judgment as to SMP's petition for writ of administrative mandate is infected by the error. We do not understand section 1805(e), as construed in *Sterling*, to give RCB the authority to reduce rents based upon *any* decrease in service, no matter how minimal, particularly if the decrease has no effect on the adequacy of housing services or compliance with health and safety codes. The *Sterling* court held that "substantial deterioration (i.e., breach of the implied warranty of habitability) or violations of housing, health and safety codes" may be considered as a basis for rent decreases. (*Sterling, supra*, at p. 186.) The landlord in *Sterling* failed to repair defective built-in appliances, a defective elevator, defective plumbing, heating and electrical wiring and defective outside lights. The landlord also failed to prevent insect infestation and gas leaks and did not repair broken windows and doors. (*Sterling, supra*, at p. 180.) In contrast, here, the minimal reduction of adult recreational services of a type commonly found only in luxury housing does not justify decreasing rents without evidence that the rent thereby became excessive or the landlord thereby realized an unjust or unreasonable return on the investment in the property.

■ As *Sterling* itself recognizes, rent control law is a proper exercise of municipal police power "so long as it is 'reasonably calculated to eliminate excessive rents' and at the same time provide[] the landlord with a just and reasonable return on his or her property." (*Sterling, supra,* 168 Cal.App.3d at p. 183, citing *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 165 [130 Cal.Rptr. 465, 550 P.2d 1001]; see also *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 771–772, 778–779 [66 Cal.Rptr.2d 672, 941 P.2d 851].) The current language in sections 1800 and 1805(e) recognizes this duality and balancing of interests. Section 1800 states that the purpose of the RCL is to regulate rental units to assure that "rents will not be increased unreasonably," and that "landlords will receive no more than a fair return" on their property. To these ends, section 1805(e) requires RCB to consider the purposes of the RCL, "and the requirements of law" in ruling on a rent decrease petition.[6] In light of the RCL's express language, and the requirements of law governing the validity of rent control ordinances, section 1805(e) may not be interpreted to mean that its listed factors constitute freestanding bases for adjusting rents. Instead, the factors listed in section 1805(e) must be interpreted to be no more than "relevant indicators of the comparative return on investment." (*Sterling, supra,* at p. 186.) A reduction in recreational facilities may be considered on a rent decrease petition, but where, as here, the reduction is a minor adjustment in the hours of luxury spa services, no rent decrease may be ordered without evidence that it resulted in excessive rent or an unjust return on the landlord's property.

In the current rent decrease proceeding, the hearing examiner found that SMP's changes to the hot tub and sauna from the previously available temperature and timing levels "represent[ed] a *failure to provide adequate housing services* which were *included in the base rent.* . . ."[7] (Italics added.) Despite the language used by the hearing examiner, the parties have approached the issues here as a matter involving a "decrease in services" within the meaning of section 1805(e). The implicit consensus is that a landlord may provide "adequate housing services" without providing tenants with a hot tub and/or sauna. RCB has also used terminology to the effect that there was a "decrease in registered base amenities." We understand this phraseology to encompass a "decrease in services" within the meaning of section 1805(e).

---

[6] The current language in section 1805(e) is different from the language in the section at the time of *Sterling.* (*Sterling, supra,* 168 Cal.App.3d at p. 184.) The current version of section 1805(e) provides that, in making individual and general adjustments of the rent ceiling, RCB shall consider the purposes of the RCL *"and the requirements of law."* (Italics added.) The current "requirements of law" language was not in section 1805(e) at the time of *Sterling.* As we have noted, the requirements of law governing rent control ordinances include a fair return to landlords on their property.

[7] Section 1801(d) defines "housing service" very broadly to include "any . . . benefit, privilege or facility connected with the use or occupancy of any rental unit."

█ RCB has promulgated specific regulations governing "Rent Decrease Standards." RCB regulation 4200(a) recognizes that the RCL's "maximum allowable rent" provisions provide landlords sufficient rental income to permit them to maintain their properties, and states that there is a public policy disfavoring the deterioration of rental housing.[8] Accordingly, "decreases [in rent] under this regulation are intended to be remedial in nature and are not designed to provide a precise correlation between the rental value of particular . . . reductions in services and the decrease in rent." (Reg. 4200(a).)

Regulation 4200(f) provides a nonexclusive list of amenities which, if decreased, justify a rent decrease. Under regulation 4200(f), a rent decrease based upon a decrease in "recreational facilities" shall be within the limits of $10 to $120. Here, the RCB hearing examiner assigned a rent decrease value of $25 to tenants Rosskam and Salvatore for their diminished enjoyment of the hot tub recreational facility (not heated during working hours) and $20 to tenant Salvatore for her diminished enjoyment of the sauna recreational facility (would not stay heated for more than one-half hour without turning the knob for another one-half hour). The record does not show how the hearing examiner came to fix the specified amounts of the rent decrease.

█ Regardless of whether the current matter is examined directly under RCL section 1805(e)'s decrease in services provisions, or under RCB regulation 4200(f), the correct interpretation of law does not allow the rent decreases that RCB ordered as to SMP and tenants Rosskam and Salvatore because there was *no evidence* elicited at the hearing on the rent decrease petitions showing the tenants' rent became excessive or there was any impact on SMP's return. We do not read *Sterling, supra*, 168 Cal.App.3d 176 to support the proposition that *any* decrease in services necessarily justifies a rent decrease to be fixed in the discretion of a hearing examiner, without regard to evidence showing the rent became excessive because of the reduction in the service or that a landlord realized a higher return than before the reduction in service. Not requiring a "precise correlation" between the decrease in services and the decrease in rent does not mean that "no correlation" is appropriate under the RCL.[9]

The administrative record demonstrates that the RCB hearing examiner recognized these principles. The hearing examiner's decision granting the rent

---

[8] All references to regulations are to those regulations promulgated by RCB in accord with its express powers under the RCL.

[9] Section 1805(c) also authorizes a landlord to petition for a rent increase. Our interpretation of section 1805(e) would apply with equal force in the context of a proceeding on a petition for a rent increase. In other words, if a landlord wants a rent increase, the landlord cannot merely point to an increase in services.

reduction petitions included a finding of fact and conclusion of law that the amounts of $45 as to tenant Salvatore[10] and $25 as to tenant Rosskam were "reasonable decreases to accomplish the purposes of the [RCL], including providing owners no more than a fair return on their properties . . . ." The problem with the hearing examiner's finding regarding the purposes of the RCL is that there is no corresponding evidence in the administrative record to support the findings. We see no evidence in the administrative record to support the conclusion that SMP's return increased $25 per month, or in any amount, or that Salvatore's or Rosskam's rent became excessive. Indeed, we see no evidence at all on the issues of whether the tenants' rent or the landlord's return was unreasonable after the change in the hot tub and sauna settings.

On SMP's petition for writ of administrative mandate, the trial court construed the RCL and *Sterling, supra,* 168 Cal.App.3d 176 for the proposition that the showing on SMP's decrease in services, i.e., the timing and temperature changes to the hot tub and sauna, resulted—as a matter of law—in SMP increasing its return. Because we find this interpretation of the RCL to be incorrect, it necessarily follows that the judgment on SMP's writ of administrative mandate must be reversed.

To overcome this result, RCB argues that a "decrease in operating expenses is presumed" whenever a landlord reduces a service that costs money to provide, such as a heated hot tub or sauna. We do not see language in the RCL establishing or supporting such a presumption, and RCB's reliance on *Ocean Park, supra,* 114 Cal.App.4th 1050 in this vein is not persuasive. *Ocean Park* did not address the issue of evidentiary presumptions under the RCL. In *Ocean Park,* a landlord who acted under the "guise" of doing construction work "simply tore out existing facilities and left them in a dilapidated, unsafe, and unusable condition" for a period of "well over two years."[11] (114 Cal.App.4th at p. 1069.) An RCB hearing examiner determined that the noted conditions justified a rent reduction, and, when the matter reached Division Four of our court, our colleagues understandably agreed: "The amounts deducted for loss of these facilities represented a reasonable adjustment . . . . Dirt, debris, trenches, exposed electrical wires, missing window panes, paper-covered floors, and the other defects and hazards described by the tenants and [RCB's] inspectors are no less obnoxious because they are the result of deliberate demolition rather than refusal to

---

[10] The decision actually states a $48 reduction as to Salvatore, but $3 was later disallowed by the RCB on administrative appeal.

[11] The facilities made unusable to the tenants included a "recreation room, a sauna, a spa, a laundry, security gates, . . . an outdoor garden area, [and] a well-maintained mail room, lobby, and stairwell." (*Ocean Park, supra,* 114 Cal.App.4th at p. 1069.)

perform maintenance. [The landlord] presented no evidence of a construction-related reason *or any reason* for failing to keep the facilities in operation and the premises in good repair. The award was justified." (*Id.* at pp. 1069–1070.)

■ The issue in *Ocean Park*, reduced to its essence, was whether substantial evidence supported RCB's rent reduction order. It did. The issue in SMP's current case is a little different, namely, as an issue of interpretation, does section 1805(e) give RCB the power to reduce rents based on *any* reduction in services. It does not. Even assuming that *Ocean Park* may be read to support the proposition that an unfair return may be presumed when a landlord "tears out existing facilities," such a presumption may not be applied where, as here, SMP did not tear out any facilities in its apartment building. RCB may not order a rent decrease based solely on a landlord's act of changing the temperature of a hot tub or sauna, without a finding, supported by substantial evidence, that the temperature changes affected the landlord's return or the fairness of the rent paid by tenants.

### III. *Reinstatement of Rents*

SMP contends the RCB hearing examiner's compliance decision demonstrates a failure to proceed in the manner required by the RCL. More specifically, SMP argues the hearing examiner violated section 1805(d)(11) when he reinstated rents effective only as of June 2009. Because we have found SMP's petition for writ of administrative mandate should have been granted, we find that all decreases in rents ordered by the hearing examiner's decision should be retroactively paid to SMP. No rent decreases should have been ordered on the evidence presented at the administrative hearing in this case.

### IV. *Traditional Mandate*

Section 1803(g) provides: "[RCB] shall issue and follow such rules and regulations, including those which are contained in [the RCL], as will further the purposes of the [RCL] . . . ." Section 1805(d)(12) provides: "The rules and regulations adopted by [RCB] shall provide for final action on any individual rent adjustment petition within . . . (120) days . . . ." On appeal, SMP contends the judgment as to its petition for writ of traditional mandate must be reversed because the RCL imposes a mandatory duty on RCB to adopt regulations establishing administrative remedies, for example, the loss of jurisdiction and a return to the prepetition status quo, when RCB fails to take final action on a tenant's petition for a rent decrease within 120 days as required under section 1805(d)(12). We disagree.

*RCB's Mandatory Duties Under the RCL*

■ Read together, and giving effect to both, sections 1803(g) and 1805(d)(12) impose a mandatory duty on RCB to follow all rules and regulations which are contained in the RCL, including that it issue a final decision on a petition for a rent decrease within 120 days. We assume without deciding that RCB could be compelled to perform its duty to issue a final decision on a rent decrease within 120 days by way of a petition for writ of traditional mandate. But that was not the relief sought by SMP's writ petition in the current action.

We also understand sections 1803(g) and 1805(d)(12) to impose a mandatory duty on RCB to issue and follow such rules and regulations "as will further the purposes of the [RCL]." So, if RCB had done nothing to implement the RCL, then we again assume without deciding that it could be compelled to initiate the rule-making process. But it is undisputed that RCB *has* issued rules and regulations governing petitions for rent adjustments. We will discuss some of those regulations more fully below. The issue raised by SMP's petition for writ of traditional mandate is whether the RCL imposes a mandatory duty on RCB to adopt specific regulations establishing administrative remedies which would give "teeth" to its mandatory duty to issue a final decision within 120 days. SMP's arguments on appeal, when considered in light of the record before us, do not persuade us that RCB has a mandatory duty to issue the type of specific remedial rule or regulation sought by SMP's petition for writ of traditional mandate. Accordingly, the trial court's judgment will not be reversed.

*RCB Regulations*

As noted above, RCB has issued regulations governing "Individual Rent Adjustments." Among these regulations, regulation 4007 provides: "As soon as practicable after the filing of a petition, and in no event later than 60 days from the date of filing, a hearing examiner shall hold a hearing as hereinafter provided to determine whether to grant or deny the petition for a rent adjustment." Regulation 4010A addresses continuances of a rent adjustment hearing.

Regulation 4019 provides: "Within [65] days after the date of the filing of the petition, the hearing examiner shall render a written decision, supported by findings of fact and conclusions of law. . . ." The regulation provides that this deadline may be extended under a specified framework.

Regulation 4021 provides: "Within [10] days after the date of the decision of the hearing examiner, any person aggrieved by the decision of the hearing examiner may appeal to the Board. . . ."

Regulation 4024 provides: "As soon as practicable after the filing of the appeal in any individual rent adjustment or base rent or amenities case, and in no event later than 120 days from the date of filing of a petition for individual rent increases, [RCB] shall affirm, reverse or modify the decision of the hearing examiner. [¶] (1) This deadline may be extended by written waiver, executed by the petitioner. [¶] (2) [RCB] may also reverse and remand a decision to the hearing examiner to take additional evidence, or reverse and remand a part of the decision and affirm, reverse or modify another part of the decision. [¶] (3) The filing of an amended petition begins a new . . . (120) day time period."

*Analysis*

■  We see no provision, either in the RCL or in RCB regulations, prescribing any administrative remedies to be applied for a violation by RCB of the time limits prescribed in the RCL and RCB regulations. The record before us suggests that adoption of such remedies may be a sound idea. The record shows that RCB violated every single one of the time limits prescribed in the RCL and RCB regulations noted above in addressing the current rent adjustment petitions.[12] But RCB does not have *a mandatory duty* to adopt a specific regulation establishing remedies for RCB's failure to abide the time limits in the RCL and RCB regulations.  ■  Although a court may order a local body to perform a mandatory duty, it may not control legislative discretion. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 445 [261 Cal.Rptr. 574, 777 P.2d 610].)

■  As a general rule, requirements in a statute concerning the time within which an act must be performed are "directory," rather than mandatory or jurisdictional, unless a contrary legislative intent is clearly established. (See, e.g., *Edwards v. Steele* (1979) 25 Cal.3d 406, 409–410 [158 Cal.Rptr. 662, 599 P.2d 1365].) The record before us today does not establish such a contrary intent. Because RCB's regulations otherwise sufficiently accomplish the purpose of RCL section 1805(d)(12), we conclude that our courts may not compel RCB to adopt any specific regulation governing the enforcement of time limits for determining rent adjustment petitions, at least not on the record before us now involving a single rent adjustment proceeding. Whether or not relief of some form would be available in a different context, upon a showing of systemic violations of RCL section 1805(d)(12), is not before us in the current case. Because RCB has acted by adopting regulations related to

---

[12] The RCB hearing examiner did not hold a hearing within 60 days of the filing of the petitions for rent decreases. (Reg. 4007.) The RCB hearing examiner did not render his decision within 65 days of the filing of the petitions for rent decreases. (Reg. 4019.) RCB did not render the final decision on appeal within 120 days of the filing of the petitions for rent decreases. (§ 1805(d)(12); reg. 4024.)

RCL section 1805(d)(12), there is no ground for issuing a writ of traditional mandate. RCB's regulations governing the time for deciding rent decrease petitions satisfy the purpose of RCL section 1805(d)(12), and RCB's decision whether to adopt specific regulations that would establish administrative remedies to be applied in the event of its failure to abide the prescribed time limits, remain a matter within RCB's legislative discretion on the record in the current case.

## DISPOSITION

The judgment as to SMP's petition for writ of administrative mandate is reversed and the cause is remanded to the trial court to issue a new and different judgment granting the petition. The judgment as to SMP's petition for writ of traditional mandate is affirmed. Each party to bear its own costs on appeal.

Flier, J., and Grimes, J., concurred.