Filed 11/21/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GURDEEP DEOL,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA VETERINARY<br>MEDICAL BOARD,<br><br>　　　Defendant and Appellant. | A172274<br><br>(Riverside County<br>Super. Ct. No. CVPS2402058) |

After an administrative hearing, the California Veterinary Medical Board (Board) revoked Gurdeep Deol's veterinary license based on findings of negligence, incompetence, and unprofessional conduct. He petitioned the trial court for a writ of administrative mandate to compel the Board to set aside its decision. (Code Civ. Proc., § 1094.5.) The court granted the petition as to the unprofessional conduct charge but denied it as to the other two charges. Both parties appealed. We reverse the judgment with respect to the unprofessional conduct charge, concluding Business and Professions Code section 4883, subdivision (g) (section 4883(g)) concerns more than just substance abuse. (Undesignated statutory references are to this code.) We otherwise affirm.[1]

---

[1] The California Supreme Court transferred this matter from the Fourth Appellate District to this court on January 15, 2025.

1

## BACKGROUND

In April 2018, Zoe — an eight-year-old cocker spaniel — arrived to Deol's veterinary practice for a routine wellness exam, which included blood work and administration of the DA2PP and Bordetella vaccines. Deol administered the vaccines despite learning that Zoe had a fever of 103.4 degrees Fahrenheit; he did not inform her owners — who were present — about the fever or that administering vaccines to a febrile dog could cause serious disease and death. Zoe's health rapidly deteriorated over the next few days. Her owners returned after she became unresponsive and began urinating blood. Deol did more blood work, which revealed that vital blood markers had dropped to life-threatening levels. He did not tell Zoe's owners about the seriousness of her condition or recommend blood transfusions. She died within 24 hours.

In May 2018, Zoe's owners filed a complaint with the Board. In September 2019, Dr. Beth Parvin reviewed the complaint. She determined Deol departed from the standard of care by failing to communicate Zoe's condition to her owners and by failing to refer her to a veterinarian who could care for her, and Parvin further determined that his failure demonstrated insufficient knowledge. Although she found the administration of the vaccines did not depart from the standard of care, she did not know that Zoe had a fever.

In November 2022, the Board initiated disciplinary proceedings, accusing Deol of negligence, incompetence, and unprofessional conduct. It alleged that administering vaccines to Zoe while she was febrile — and his treatment of her when she returned — constituted negligence. It also alleged his failure to appreciate the severity and urgency of her condition and appropriately treat it constituted incompetence, and his failure to inform

2

Zoe's owners of her prognosis constituted unprofessional conduct. Moreover, it noted it had previously disciplined him for the death of another animal, which also resulted from his failure to identify, treat, and appreciate the seriousness of a life-threatening condition and to communicate that condition to the animal's owners. Deol filed a notice of defense.

An administrative hearing took place in November 2023. One expert — Dr. James Howard — testified. He based his opinions on his 40 years of veterinary experience, his education, and data derived from textbooks, publications, and scientific articles that existed at the time of the incident. He defined the standard of care as "what a similar practitioner in a similar position" would do "when faced with a similar case." He also noted he had personally been under similar circumstances on numerous occasions. The administrative law judge also admitted Parvin's report into evidence.

Howard opined that Deol violated the standard of care. He opined it is "well outside . . . the . . . standard of practice to administer vaccines to a febrile animal" and explained why. He also opined "it was below the standard of care to have not offered" a blood transfusion as a treatment after Zoe's blood markers dropped so low, "that the average practicing general practitioner would have made the call to recommend transfusion therapy to stabilize this patient," and that the failure to do so constituted negligence and incompetence. Finally, he opined that failing to provide a transfusion violated a basic rule of veterinary medicine — designed to stabilize patients whose blood markers fell to life-threatening levels regardless of the cause — and "the average veterinarian" would have followed it.

In December 2023, the administrative law judge found clear and convincing evidence of negligence, incompetence, and unprofessional conduct, and her proposed decision determined Deol's license should be revoked. In

January 2024, the Board adopted the proposed decision, and it subsequently denied Deol's petition for reconsideration.

In March 2024, Deol filed a petition for writ of administrative mandate in the trial court. He argued the Board imposed discipline without cause, that essential elements of the violations were not supported by clear and convincing proof, and the discipline imposed constituted an abuse of discretion. For the first time, he argued that only evidence of substance abuse could support the unprofessional conduct charge.

The trial court denied the petition with respect to the negligence and incompetence charges, but it granted the writ as to the unprofessional conduct charge. In doing so, the court concluded it could consider Deol's new statutory interpretation argument. It also concluded that section 4883(g) — the provision concerning unprofessional conduct — only refers to substance abuse so Deol's failure to communicate could not be a basis for discipline under that subdivision. But the court concluded that clear and convincing evidence otherwise supported the administrative law judge's findings of negligence and incompetence.

## DISCUSSION

We address the Board's and Deol's appeals in turn and begin with the Board's appeal.

### I.

At the outset, the Board contends Deol forfeited his argument that section 4883(g) only encompasses substance abuse by failing to raise it in the administrative hearing and instead raising it for the first time in his writ petition. We disagree.

Ordinarily, "a litigant must raise all issues before an administrative agency in order to raise them on writ review." (*Richman v. Santa Monica*

4

*Rent Control Bd.* (1992) 7 Cal.App.4th 1457, 1463.) But there are instances when a reviewing court will exercise its discretion to consider an issue not previously raised, "including when the issue relates to a question of law only." (*Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 421, fn. 7.) Because the interpretation of section 4883(g) involves a question of law — and the facts are not in dispute — the trial court validly exercised its discretion to consider the issue, and we do so as well. (*Air Machine*, at p. 421, fn. 7.)

The Board next argues that section 4883(g) applies to more than just substance abuse. On this point, we agree.

"When construing a statute, we determine the Legislature's intent and effectuate the law's purpose by examining the statutory language, giving the words their plain and ordinary meaning." (*De Martini v. Superior Court* (2024) 98 Cal.App.5th 1269, 1275 (*De Martini*).) "If the statutory text is unambiguous, the plain meaning controls." (*Ibid.*) "But if the language 'supports more than one reasonable construction,' 'we may look to extrinsic aids,' such as the legislative history." (*Ibid.*) We "independently review legal issues, such as those involving statutory interpretation." (*Id.* at p. 1274.)

Section 4883 provides that the "board may deny, revoke, or suspend a license or registration or assess a fine . . . for any of the following[.]" One basis for discipline is "[u]nprofessional conduct, that includes, but is not limited to, the following: [¶] (1) Conviction of a charge of violating any federal statutes or rules or any statute or rule of this state regulating dangerous drugs or controlled substances. . . . [¶] (2)(A) The use of, or prescribing for or administering to oneself, any controlled substance. [¶] (B) The use of any of the dangerous drugs specified in Section 4022, or of alcoholic beverages to the extent, or in any manner as to be dangerous or injurious to a person licensed

5

or registered under this chapter, or to any other person or to the public, or to the extent that the use impairs the ability of the person so licensed or registered to conduct with safety the practice authorized by the license or registration. [¶] (C) The conviction of more than one misdemeanor or any felony involving the use, consumption, or self-administration of any of the substances referred to in this section or any combination thereof . . . . [¶] . . . [¶] (3) A violation of any federal statute, rule, or regulation or any of the statutes, rules, or regulations of this state regulating dangerous drugs or controlled substances." (§ 4883(g).)

Generally, unprofessional conduct is understood to refer to "conduct which breaches the rules or ethical code of a profession, or conduct which is unbecoming a member in good standing of a profession." (*Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 575, fn. omitted.) Although section 4883(g) includes several examples of substance abuse as illustrations of unprofessional conduct, other language suggests an intent to sweep more broadly. The statute provides "[u]nprofessional conduct . . . includes, *but is not limited to,*" and then it provides the examples of substance abuse. (§ 4883(g), italics added.) The phrase " ' "including, but not limited to" ' " is generally a phrase of enlargement. (*Brown v. City of Inglewood* (2025) 18 Cal.5th 33, 43.)

In arguing to the contrary, Deol relies on the interpretive canon of *ejusdem generis*, "meaning ' " ' "of the same kind." ' " ' " (*Brown v. City of Inglewood, supra,* 18 Cal.5th at p. 43.) The canon applies when " ' " 'specific words follow general words in a statute,' " ' " and it "instructs that ' " 'the general term or category is "restricted to those things that are similar to those which are enumerated specifically." ' " ' " (*Ibid.*; *Medtronic USA, Inc. v. California Dept. of Tax & Fee Admin.* (2025) 110 Cal.App.5th 817, 824

6

[doctrine not an " ' "immutable" ' " rule but is a " ' "guideline[] subject to exceptions" ' "].) Deol argues section 4883(g)'s listing of substance abuse examples — in contrast to statutes regulating unprofessional conduct in other professions — demonstrates that the Legislature intended to restrict the meaning of unprofessional conduct to substance abuse. Assuming there are multiple plausible interpretations, we turn to extrinsic aids to discern the Legislature's intent.[2] (*De Martini, supra*, 98 Cal.App.5th at p. 1275.)

Our review of the legislative history supports the Board's interpretation. (*De Martini, supra*, 98 Cal.App.5th at p. 1277.) Section 4883 was added to the Business and Professions Code in 1978 by Senate Bill No. 1795. The bill "represent[ed] a dramatic strengthening and expansion of the tools available to the Board to carry out its legislative mandate," and the "grounds for [discipline] [were] redrafted so as to be clearer, more responsive to the modern day practice of veterinary medicine, in order to allow the Board to more effectively regulate the practice." (Dept. Consumer Affairs, Enrolled Bill Rep. on Sen. Bill No. 1795 (1977-1978 Reg. Sess.) Sept. 20, 1978, p. 4.) Among the changes, the bill included "new disciplinary violations" for "unprofessional conduct," and "disciplinary action for 'unprofessional conduct' would be more closely related to issues involved in the practice of veterinary medicine and specifically the care and treatment of animals than the language which it replaces. *One instance of unprofessional conduct will be misuse of drugs.*" (Dept. Consumer Affairs, Analysis of Sen. Bill No. 1795 (1977-1978 Reg. Sess.) July 6, 1978, pp. 1, 3, italics added.) We can find nothing in the legislative history — and Deol fails to address the legislative

---

[2] We grant the Board's unopposed request to take judicial notice filed February 21, 2025. (Evid. Code, §§ 452, subds. (b), (c), 459.)

7

history in his briefing — indicating the Legislature intended that only substance abuse would constitute unprofessional conduct.[3]

Given the protective purpose of section 4883, its legislative history, and use of the phrase "includes, but is not limited to," we conclude section 4883(g) empowers the Board to impose discipline for more than just substance abuse. (§ 4800.1 [protecting public is paramount purpose]; *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 532 [protective statutes liberally construed in favor of their purpose]; *Shea v. Board of Medical Examiners*, *supra*, 81 Cal.App.3d at p. 575.)

II.

In his appeal, Deol first argues that Howard's testimony did not establish a recognized standard of care because he did not provide evidence of "the manner in which practicing veterinarians actually do or do not handle comparable cases." (Capitalizations omitted.) We disagree.

"To establish a veterinarian malpractice claim, a plaintiff is required to present expert testimony establishing the appropriate standard of care in the relevant community." (*Quigley v. McClellan* (2013) 214 Cal.App.4th 1276, 1283 (*Quigley*).) " 'Standard of care " 'is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and

---

[3] The Board notes that it has historically interpreted section 4883(g) to include conduct beyond substance abuse. (Cal. Code Regs., tit. 16, §§ 2032.35 [unprofessional conduct includes "[a]ltering or modifying the medical record of any animal, with fraudulent intent, or creating any false medical record, with fraudulent intent"], 2038(d)(2) [a veterinarian who authorizes a chiropractor to perform musculoskeletal manipulation upon an animal in violation of a regulation has engaged in unprofessional conduct].) While we need not rely on these regulations, we acknowledge "courts show deference to an administrative body's reasonable construction of relevant statutory provisions within its field of expertise." (*Department of Corrections & Rehabilitation v. State Personnel Bd.* (2015) 238 Cal.App.4th 710, 717.)

8

can only be proved by their testimony.' " ' " (*Ibid.*)  "This is because ' "[t]he standard of care in a [veterinarian] malpractice case requires th[e] [veterinarian] exercise in diagnosis and treatment that reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of the [veterinary] profession under similar circumstances." ' " (*Ibid.*)  "In order to establish what that degree of skill, knowledge and care is, there must be expert testimony explaining how the average veterinarian of ordinary skill and knowledge from the relevant community would have treated the case under similar circumstances." (*Id.* at p. 1285.)

Howard's testimony established the standard of care.  (*Quigley*, *supra*, 214 Cal.App.4th at pp. 1283, 1285.)  He defined the standard of care as "what a similar practitioner in a similar position" would do "when faced with a similar case."  He based his opinion on his 40 years of veterinary experience, his education, and further data derived from textbooks, publications, and scientific articles that existed at the time of the incident.  (Evid. Code, § 801 [an expert may properly base testimony on their own "special knowledge, skill, experience, training, and education"].)  He also noted that he had personally been under similar circumstances on numerous occasions.  (*Ibid.*)

Moreover, Howard compared Deol to an average veterinarian, not to — as Deol contends — himself or the ideal veterinarian.  (Compare with *Quigley*, *supra*, 214 Cal.App.4th at pp. 1284–1286; *Spann v. Irwin Memorial Blood Centers* (1995) 34 Cal.App.4th 644, 655.)  For example, Howard opined it is "well outside . . . the . . . standard of practice to administer vaccines to a febrile animal."  He also opined "it was below the standard of care to have not offered" a "blood transfusion" as a "treatment," "that the average practicing general practitioner would have made the call to recommend transfusion therapy to stabilize this patient," and that the failure to do so violated a basic

9

rule of veterinary medicine that "the average veterinarian" would have followed. Indeed, Deol admits that to "deviate from a professional standard of care, the defendant/respondent must have done something that the average veterinarian of ordinary knowledge and skill would never do in that situation, or . . . failed to do something that every qualified member of the profession would typically do." That is exactly what Howard's testimony established.

Next, Deol argues that Howard's testimony did not constitute clear and convincing evidence that Deol was negligent, and the trial court erred in denying his petition as to the negligence charge.[4] We disagree.

Howard's testimony constituted clear and convincing evidence of Deol's negligence. To begin, Deol contends there were conflicting expert reports as to whether administering vaccines to a febrile dog fell below the standard of care. He misrepresents the record. Parvin — who was unaware of Zoe's fever — did not consider whether administering vaccines to a febrile dog fell below the standard of care. Her report therefore had no evidentiary value on that issue. (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155.) Next, Deol again contends that Howard relied entirely on "professional preferences, imposing an aspirational community standard rather than . . . an existing one." That also misrepresents the record. As explained above, Howard's testimony established a "standard of practice" for the "average practicing general practitioner" based on his

---

[4] While the parties agree we review the trial court's findings for substantial evidence, Deol contends we must find substantial evidence to satisfy the clear and convincing standard of proof. The Board disagrees. We need not resolve the issue because, under any standard, sufficient evidence supports the findings.

extensive knowledge. (Evid. Code, § 801; *Quigley*, *supra*, 214 Cal.App.4th at pp. 1283, 1285.)

Lastly, Deol contends Howard's testimony did not constitute clear and convincing evidence of incompetence because — in Deol's view — the finding was based on one incident that Howard never described as incompetent and on Deol's failure to communicate rather than his knowledge base. He thus argues the trial court erred by denying his petition with respect to the incompetence charge. We disagree.

The incompetence finding is supported by case law and clear and convincing evidence. (*Kearl v. Board of Medical Quality Assurance* (1986) 189 Cal.App.3d 1040, 1055–1056.) A " 'single act of misconduct under certain circumstances may be sufficient to reveal a general lack of ability to perform the licensed duties, thereby supporting a finding of incompetency . . . .' " (*Ibid.*, italics omitted.) Here, like in *Kearl*, "there were several acts or decisions" in this one incident "which were improper." (*Id.* at p. 1056.) As to the evidence, Deol misrepresents the record. Contrary to his assertions, Howard testified that failing to recommend a blood transfusion was incompetent, and the administrative law judge based her incompetence finding on his failure to see the need for a blood transfusion. Moreover, Parvin also determined Deol lacked knowledge concerning the need for blood transfusions, and the Board noted this was the second time an animal died because he failed to identify, treat, and appreciate the seriousness of a life-threatening condition.

11

## DISPOSITION

The trial court's judgment is reversed as to the Board's unprofessional conduct charge but otherwise affirmed.  The matter is remanded to the trial court with instructions to deny Deol's petition for writ of administrative mandate in full.  The Board shall recover its costs on appeal.

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
FUJISAKI, J.

A172274; *Deol v. California Veterinary Medical Board*

13

Superior Court of Riverside County, Hon. Kira L. Klatchko

George M. Wallace, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Carl W. Sonne, Assistant Attorney General, Marichelle S. Tahimic and Lauro A Paredes, Deputy Attorneys General, for Defendant and Appellant.